Samuel S. Tripp, Spec. Ref.
Reference by order dated September 12, 1967 to bear and determine the issues presented *893 by the pleadings in this action to foreclose a mechanic’s lien. (OPLR 4317, subd. [b].)
Following the joinder of issue on December 27, 1966, the defendant bonded the lien filed on October 20,1966 by executing and filing a court-approved surety undertaking dated July 28, 1967 for the sum of $52,500 in accordance with orders dated January 11, 1967 and August 11, 1967, respectively, fixing the amount of the undertaking and discharging the lien of record. Plaintiff did not supplement its complaint by adding a cause of action to recover upon the undertaking and joining the surety thereon as party defendant. The action proceeded to trial on the original pleadings as limited by defendant’s bill of particulars dated January 20, 1967. (Brandt v. Glottstein, 19 Misc 2d 785.)
The plaintiff contracted with defendant as owner and general contractor for the masonry work on two two-family houses in Forest Hills and three six-story type apartment buildings located on Grand Central Parkway, Glen Oaks, Queens County, New York. The two two-family houses were properly completed and are not involved in this litigation which concerns solely the three apartment buildings.
The basic contract between the parties dated April 26, 1965 provides for the payment by the defendant to the plaintiff of the sum of $430,000 for the work and materials therein specified ; an addendum dated July 8,1965 provides for a $12,000 increase of the price for such work and materials and for certain additional work to be performed by the plaintiff for the price, as thus increased, of $442,000; a further writing dated September 13, 1965 provides for certain extra work totaling $997.38. The result is the total sum of $442,997.38, on account of which the defendant indisputably paid to the plaintiff a. total of $393, 878.52. It is for the balance of $49,118.86 that the plaintiff filed its notice of lien and brought this action to foreclose it and for personal judgment against the defendant, with appropriate interest from June 23, 1966 and the costs and disbursements of the action.
Full performance of its contract pleaded by the plaintiff in paragraph “Fifteenth” of its complaint and denied by the defendant, was amended on consent, “ to conform to the proof upon the trial of this action by eliminating therefrom the words 1 duly performed ’ and inserting therein the words ‘ substantially performed’ ”. On page 10 of its posttrial brief served on December 18, 1967, the plaintiff conceded that the “Value of uncompleted work”, consisting of 4 items, aggregated $4,456.96. As a result, the amount claimed in plaintiff’s notice *894 of lien verified October 14, 1966 and paragraph “ Sixteenth ” of its complaint as the unpaid balance under its contract was reduced from $49,118.86 to $44,661.90.
The defendant, however, claimed in its posttrial brief that plaintiff cannot recover any amount since it had not established substantial performance, but had ‘‘ in fact breached its contract by leaving the job without excuse ”, with 22 items of ‘ ‘ omitted and defective work ’ ’ totalling $40,498.50; that in any event, it, defendant, is entitled to an affirmative judgment to the extent of $17,939.10 ‘ ‘ representing the amount of willful exaggeration of the lien ”, which should be declared void for that reason, with a specification of the amount of each of the 14 items* by which such lien was willfully exaggerated. (Lien Law, § 39-a; Goodman v. Del-Sa-Co Foods, 15 N Y 2d 191, 198.)
At my direction during a pretrial conference, the attorneys prepared schedules reflecting the respective claims of their clients concerning uncompleted or defective work as the case may be. These were received in evidence by consent to facilitate the trial without, of course, conceding the truth thereof. Defendant’s exhibit was divided into five schedules. Either because of lack of proof or at variance with its bill of particulars, only the items of defendant’s Schedules I and II, hereinafter discussed, survived the trial.
The total of all items allowed in Schedules I and II is $22,867.60.
The defendant contends that plaintiff cannot recover any amount in this action because of its inexcusable failure substantially to complete its contract.
“ The term ‘ substantial performance ’, as used in connection with a building and construction contract, is a relative term, and there is no fixed formula, or mathematical rule, for determining whether or not such a contract has been substantially performed. Accordingly the question of substantial performance is one to be determined in each case with reference to the existing facts and circumstances ”. (17A C. J. S., Contracts, § 509, subd. b, pp. 821-822.) In Marshall v. Louron Homes (24 A D 2d 574, 575), the Appellate Division of the Second Department held that 1 ‘ it was for the jury to determine whether the *895 builder had completed the contract either fully or substantially ”.
The omissions hereinbefore described were not pervasive in the sense that they constituted such a deviation from the general plan of. the work contemplated by the contract that they could not be remedied and the three apartment houses occupied as planned. The $22,867.60 here found to be the reasonable cost to the defendant for completing the largely peripheral work that plaintiff omitted, including rectifying that which it had performed poorly, does not, in relation to the gross contract price of $442,997.38, negative a finding that plaintiff completed the contract substantially.
Plaintiff’s refusal to return to the job to complete the work, even if inexcusable and otherwise a ground for withholding recovery (Marshall v. Louron Homes, Inc., supra; Barney’s Clothes v. W.B.O. Broadcasting Corp., 165 Misc. 532, 533, affd. 253 App. Div. 889), is not here conclusive in view of the provisions of paragraph “ 11 ” of the basic contract dated April 26, 1965, which provides for the completion of the work by the owner in the event the contractor fails to do so. This document, on a printed Blumberg form of ‘ ‘ Owners & Builders Contract ’ ’, supplemented by a two-page typewritten rider dated the same date and two subsequently executed typewritten addenda, were prepared by the defendant.
No proof was adduced that the defendant owner served upon the plaintiff contractor a “notice in writing ”, as provided in the first subparagraph of paragraph “ 11 ” to remedy its “failure to perform this contract” should plaintiff “neglect, in the prosecution of said work, to perform any provision of this contract * * * after said neglect is certified to in writing”. Nor was there any proof that the defendant terminated the plaintiff’s employment under the contract, as provided in the second subparagraph, ‘1 after the failure of said Contractor to remedy any deficiencies in the performance of this contract as last mentioned ’ ’ and the certification by the architect ‘1 in writing that such failure or neglect is sufficient ground therefor ”.
No architect’s certification, as provided in paragraph “ 11 ” was established — there was no supervising architect on this job. The defendant, however, repeatedly requested the plaintiff to complete its work and indeed sought and obtained the intercession to that end of union representatives who set up a meeting on October 19, 1966, with the parties, but to no avail. Plaintiff’s officers attended the meeting but never resumed the work, “ for lots of reasons ” as Mr. La Barbera, its president put it, when conceding that his response was to cause the notice *896 of lien executed on October 14,1966, to be filed the day following that meeting.
The defendant subsequently assumed the completion of the work plaintiff had omitted to perform and to rectify, in part, that which had not been performed in a proper and workmanlike manner. It is to be noted that under the first subparagraph of paragraph “ 11 ” of the basic contract, it was provided that “ the Owner shall be entitled to remedy such deficiency and deduct the cost thereof from the payment then due or thereafter to become due to the Contractor. ” Under the second subparagraph, the owner, after the contractor’s “ failure * * * to remedy any deficiencies in the performance of this contract as last mentioned ’ ’ [in the first subparagraph] was ‘ ‘ entitled to terminate the employment of said Contractor under this agreement, and * * * to enter upon the premises where said work is being done and take possession thereof for the purpose of completing the work * * * and in the event last specified, the said Contractor shall not be entitled to receive any further payment under this contract until the work * * * shall be entirely finished, at which time, if the unpaid balance of the amount payable under this contract shall exceed the amount incurred by said Owner in completing said work, then such excess shall be paid by the Owner to said Contractor; but if the expense incurred by the Owner in completing this work shall exceed any such unpaid balance, then the Contractor shall pay the deficiency to the Owner. ”
Inasmuch as upon the persuasive proof the cost to the defendant owner in remedying the deficiencies in th^ plaintiff contractor’s performance of the contract was $22,867.60, or less than “ the unpaid balance of the amount payable under this contract ”, the latter’s mechanic’s lien attached to $26,251.26, which is comprised of the original gross contract price of $442, 997.38 less $393,878.52 concededly paid by defendant and the aforesaid $22,867.60 cost of completion. (See Fraenkel v. Friedmann, 199 N. Y. 351; Kempa v. Moell, 283 App. Div. 681.)
The remaining issue to be determined is the defendant’s second defense and counterclaim, originally for $55,118.86 but reduced on page 14 of its pos'ttrial brief to $17,939.10. Based upon the penal provisions of section 39-a of the Lien Law, the defendant contends that plaintiff willfully exaggerated its lien in that amount for which an affirmative judgment should be rendered against it.
I find that plaintiff’s attorney, relying on statements of his client’s officers, prepared a notice of lien verified October 14, 1966 and filed on October 20, 1966, for $49,118.86, which is the *897 arithmetical difference between the gross amount of the contract —$442,997.38—and $339,878.52 paid by defendant to the plaintiff except $18,378.52 which was paid to others for plaintiff’s account and benefit and with its consent or acquiescence. Further, in reliance upon his client’s statements, this attorney pleaded in the verified complaint full performance of the terms of the contract on its part to be performed.
Vincent G-rupi, plaintiff’s secretary and the job superintendent in charge of the work to be performed under the contract, testified on direct examination that all work required to be performed by plaintiff in- connection with the three apartment houses had been completed except as set forth in plaintiff’s Exhibit 4. On cross-examination, however, another item of work was conceded to have been omitted and the original total value of all items omitted was raised to $4,456.90. Until immediately prior to the trial then, when plaintiff’s foregoing exhibit was prepared, not even the plaintiff’s attorney was made aware of any omitted work. Mr. Grupi admitted, on cross-examination, that he told his lawyer that all work had been completed in accordance with the contract and that he had not informed him of any omitted work.
Plaintiff’s failure to deduct the four concededly omitted items of work from the $49,118.86 claimed in its notice of lien to be the balance due under the contract was no mere unintentional inaccuracy in the amount of the lien but a willful exaggeration thereof, for which the defendant is entitled to recover in addition to the amount found to be due under its first counterclaim. (Goodman v. Del-Sa-Co. Foods, 15 N Y 2d 191, 194.) The items of concededly omitted work- are the filter room for the swimming pool, the reasonable value of which — $1,048.50—was accepted by defendant; the remaining three items, the reasonable value of which was disputed, have already been found as follows: four steps in the pool area — $140; the northerly wall at the pool area — $7,058.40; and the cast stone coping on top of the westerly wall — $680. The total reasonable value of these four items is $8,926.90 that defendant is entitled to recover under its second counterclaim.
No recovery is allowed for the remaining 10 items of omitted work claimed to have been willfully exaggerated. While these were not deducted from the balance set forth in the notice of lien, sharp issues of fact were presented and vigorously litigated right down to the submission of reply briefs on January 26, 1968, as to whether they were omissions or orally-agreed-upon substitutions for work not originally called for by the contract. These sharply disputed items were resolved in *898 defendant’s favor on the basis of credibility and the burden of persuasion. (See generally, Fisch, New York Evidence § 1090, pp. 529-531.) In these circumstances, it cannot be said that failure to deduct them from the amount of the lien was intentional or willful within the meaning of the applicable penal sections of the Lien Law.
Plaintiff’s recovery must, therefore, be limited to $17,324.36 with interest from June 23, 1966, for which it has a valid lien. This amount is arrived at by deducting $22,867.60 found in defendant’s favor under its first counterclaim plus $8,926.90 under its second, or a total of $31,794.50, from the balance of $49,118.86 remaining unpaid under the contract.
Inasmuch as the lien was discharged by the filing of the discharge-of-mechanic’s lien bond, this action, ostensibly to foreclose the lien, in reality became an action to test its validity had it not been discharged. The lien having been found valid, a judgment on the bond rather than a judgment of foreclosure against the real estate would have been recoverable had the surety been made party-defendant. Plaintiff, having failed to join the surety, is entitled to a money judgment in the sum of $17,324.36 with interest from June 23, 1966 solely against the defendant. Recourse to liability up to the amount of the bond may be had in a separate action should the judgment to be entered herein against the defendant remain unpaid for 30 days after the service thereof with notice of entry, for which a stay of execution is granted. (Adams Eng. Co. v. Menowitz, 53 Misc 2d 364.) In the circumstances here presented, neither party is granted costs or disbursements. (CPLR 8101, 8108.)

 The 14 items totalling $17,939.10 that defendant claimed the plaintiff failed to deduct from the unpaid balance under the contract thereby willfully exaggerating its lien, are included in the 22 items totalling $40,498.50 of the claimed " omitted and defective work ” it was able to establish under.the court’s ruling limiting its proof to the items listed in its bill of particulars (Voceia v. Pleasure Boat Co., 239 App. Div. 165, 168, affd. 264 N. Y. 656), except for amounts conceded by the plaintiff.