CLINCHFIELD COAL COMPANY, McClure River Coal Co., Inc., Big Star Coal Co., #1, Berry Mining, Mullins Enterprises, Inc., of Va., Fox-Ten Mining Co., Inc., Westwood Coal Co., Oliver Coal Co., Inc., Golden Chip Coal Co., Chestnut Ridge Mining Co., Chestnut Ridge Fuels, Inc., Dale Energy Corp., Alvy Creek Coal Co., Inc., Heritage Mining Co., Honey Camp Coal Corp., C.B.S. Coal Co., Bob's Branch Coal Co., Inc., J & J Coal Co., Inc., Morgan Mining Co., Inc., South Hollow Coal Co., Inc., B.M. Coal Co., No. 2, Big T Coal Co., Inc., Condor Coal Co., Inc., Big Valley Coal Co., M.M. & S. Coal Co., Inc., T.J.T. Corp., Apache Coal Co., Inc., Blue Chip Coal Co., Inc., Old Ralph Mining, Inc., Bird Coal Co., Inc., Lynn K. Coal Co., Inc., Sandy Lane Coal Co., Inc., B and B Mining Co., Inc., Warrior Coal Co., Inc., Coleman and Yates Coal Co., Black Gold Coal Co., Ivy Branch Coal Co., Inc., Big Track Coal Co., Inc., Little Six Corp., Sandy Ridge Coal Corp., Norma-A Coal Corp., White Oak Coal Co., C.D.F. Coal Co., Inc., Mining Energy Coal Co., Skeens Fork Coal Co., French Contractors, D.D. & W. Coal Co., Inc., Appellees,

v.

DISTRICT 28, UNITED MINE WORKERS OF AMERICA & UMWA, LOCAL UNION NO. 1098, Appellants.

No. 83–1758.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1984.

Decided June 21, 1984.

Rehearing Denied Aug. 30, 1984.

Gerald F. Sharp, Castlewood, Va., on brief, for appellants.

S.W. Zanolli, Washington, D.C., Ronald E. Meisburg, Paul R. Thomson, Jr., U.S. Atty., Roanoke, Va. and Forrest H. Roles, Charleston, Va., for appellees.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

PER CURIAM:

The United Mine Workers of America, Local 1098 and District 28 appeal from the district court's order vacating an arbitral decision against the Clinchfield Coal Company.

Clinchfield has extensive coal operations in Virginia, a substantial portion of which are licensed out to independent contractors. Article IA Section (h) of the collective bargaining agreement signed with the Union provides that such licensing is prohibited "unless the licensing out does not cause or result in the layoff of Employees of the Employer."

In May 1982, Clinchfield laid off approximately 35% of its employees in response to a serious downturn in the demand for coal in April 1982. As part of this reduction, Clinchfield closed down permanently the Moss # 2 mine in Russell County, whose employees were represented by Local 1098. The Union filed a grievance alleging that but for the licensing out of other coal mining operations the employees of Moss # 2 would not have been laid off. The case went to an arbitrator who ordered reinstatement of the laid off employees, despite his finding that

> [s]pecifically, Management decided to close the subject mine (Moss # 2) since it was about to be depleted and because it didn't have a stockpile facility; and this was viewed as being highly disadvantageous at a time when coal sales were slow. In essence, Moss # 2 was closed down because of declining market conditions and matters related directly thereto. Thus, the mine was sealed, upon undisputed reports showing that there wasn't enough coal left to justify reopening it.

The arbitrator held that Section (h) limits the ability of management in such circumstances to lay off its own employees. The district court found that the arbitral decision did not "draw its essence" from the contract because it ignored the common law of the industry, and vacated the award. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). This appeal followed.

Clinchfield contends that affirmance is compelled by a recent decision of this Court, *Clinchfield Coal Company v. District 28, United Mine Workers of America*, 720 F.2d 1365 (4th Cir.1983) (Clinchfield I), which affirmed an order of the same district court vacating an arbitral decision awarding reinstatement to laid off miners. We agree.

■ At issue in that case was the same series of layoffs by Clinchfield in May 1982 due to the downturn in demand for coal. We held there that the arbitrator had failed to recognize the "common law" of the industry as expressed in past arbitral decisions, and incorporated in the current collective bargaining agreement. This common law holds that the company can lay off employees for economic reasons, such as a decline in demand, without violating Section (h) despite the continued leasing out of other operations. Only when a decision to license out is the "proximate cause" of a subsequent layoff is Section (h) violated. At 1370. Because the arbitrator had failed to consider the economic motivation for the layoff, the arbitral decision did not draw its essence from that provision of the contract proscribing only those lay offs proximately caused by licensing out. *Id.* at 1369.

■ In this case the arbitrator specifically found that the decision to shut down Moss # 2 was motivated by economic conditions. Thus the arbitral decision here even more clearly than that in *Clinchfield I* did not draw its essence from the contract under the *Clinchfield I* rationale.* The judgment is therefore

AFFIRMED.

---

* The binding effect of *Clinchfield I* is the sole and sufficient basis for our decision. In so confining it, we disapprove the district court's expressed view, adverting to other arbitral decisions in conflict with that under review, that when two arbitral decisions on the "identical factual situation" are in direct conflict, both cannot "be *in accordance with* (sic) the essence of the contract," and that a reviewing court must, to insure uniformity, therefore reject one

or the other. 567 F.Supp. 1431 at 1433 (empha-
sis added). This misapprehends the judicial
function in review of arbitral decisions under
bargained agreements.

Insuring uniformity of arbitral decisions is
*not* a compelled function of judicial review.
The parties to the controlling contract may well
have bargained for possibly disparate results on
"identical factual situations" as a price willingly
paid for the perceived virtues of the arbitral
process. In appropriate circumstances a re-
viewing court may quite properly, therefore,
uphold "conflicting" arbitral decisions on the

"identical factual situation" on the basis that,
though conflicting in result, each nevertheless
sufficiently "draws its essence" from a control-
ling contractual provision.

*Stare decisis* may, however, require that a
reviewing court defer to a prior, authoritative
*judicial* decision that a particular arbitral deci-
sion indistinguishable in its critical elements
from one under present review did, or did not,
draw its essence from the controlling contractu-
al provision. That is the narrow basis for our
decision here.