**EDWARD HINES LUMBER COMPANY OF OREGON, Plaintiff-Appellee,**

v.

**LUMBER AND SAWMILL WORKERS LOCAL NO. 2588 and Central Oregon District Council, LPIW, Defendants-Appellants.**

No. 84–3503.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1984.

Decided June 25, 1985.

---

Kilkenny, Circuit Judge, filed dissenting opinion.

David H. Wilson, Jr., Larry K. Amburgey, Bullard, Korshoj, Smith & Jernstedt, Portland, Or., for plaintiff-appellee.

Bernard Jollis, Michael T. Garone, Jolles, Sokol & Bernstein, Portland, Or., for defendants-appellants.

Before KILKENNY and SCHROEDER, Circuit Judges, and AGUILAR *, District Judge.

AGUILAR, District Judge:

INTRODUCTION.

Appellee, Edward Hines Lumber Company of Oregon, (hereafter "the Employer") originally filed this action in the United States District Court for the District of Oregon seeking to vacate an arbitration award in favor of appellants, Lumber and Sawmill Workers Union Local 2588 and the Central Oregon District Council, LPIW (hereafter "the Union"). The Union counterclaimed for the award's confirmation.

On December 12, 1983, the district court granted summary judgment for the employer and vacated the arbitration award.

---

* The Honorable Robert P. Aguilar, United States District Judge for the Northern District of California, sitting by designation.

The union's appeal seeks reversal of the district court's decision and reinstatement of the arbitrator's award. The union argues that the arbitrator did not exceed his authority in ruling that there were limitations on the employer's right to subcontract bargaining unit work.

We agree with the union's position. Accordingly, we reverse the district court decision and confirm the arbitrator's award.

FACTS.

The facts are essentially undisputed. The employer operates several facilities and related logging operations near John Day, Oregon. The underlying arbitration took place pursuant to a Collective Bargaining Agreement (hereafter "the Agreement") between the union and the employer covering a sawmill, veneer plant, planing mill, and logging operation. The primary issue for determination was the employer's decision to subcontract logging work. The Agreement itself contained no express provision regarding subcontracting.

The employer's logging had been traditionally performed partly by its employees and partly by subcontractors. Subcontracting had occurred quite regularly over many years and continued throughout the time covering the Agreement (a three-year agreement beginning August 13, 1981). The employer had consistently maintained a mix of 60% company loggers and 40% subcontractors. The union had been generally displeased with subcontracting in the past and had attempted to secure limits on the employer's subcontracting, (including its complete abolition) either through contract negotiations or by arbitrators' decisions, to no avail. The union had continually argued that the existing provisions of the Agreement constituted a limitation on the employer's right to subcontract bargaining unit work. The employer contended that it had an unlimited right to subcontract, by virtue of the management rights clause in the Agreement.[1]

During the economic recession of 1979–1982 when logging and other similar industries were heavily hit, the employer incurred losses which led to the closing of the John Day sawmill and related logging operations.

For a variety of reasons motivated by those serious economic considerations, the employer decided that the mill could not be opened under the proposed budget unless the logging operations were contracted. In September 1982 the employer reopened and eliminated the logging crews represented by the union and replaced them with unrepresented subcontractors. The union immediately filed a written grievance and, after exhaustion of grievance procedures, the matter was scheduled for arbitration. The union submits that the arbitrator was faced with an entirely new issue, i.e., whether the employer could permanently replace 76 bargaining unit employees while utilizing non-bargaining unit personnel to perform their jobs. Each party had a full opportunity to present evidence at the arbitration and voluminous post-hearing briefs were filed.

The union received a favorable arbitration award. The arbitrator recognized the employer's right to subcontract, but found an implied limitation on that right. The arbitration award stated that the historical proportion of 60% company workers and 40% subcontractors for logging work had become inextricably part of the contract and the agreement had been negotiated within that context; thus, the employer was limited to subcontracting no more than 40% of its logging operations. The arbitrator held that the employer's right was limited by the implied covenant found in every contract together with the recognition, wages, union security, and other clauses in the Agreement.

The employer moved for vacation of the award and the district court concluded that "it cannot be stated that the arbitrator's award draws its essence from the collective

---

**1.** The management rights clause provides: "All rights of management and direction of the business, and the exercise of discretion reasonably related thereto, which have not been specifically abridged, delegated or modified by the Employer under a provision of this Agreement are recognized by the Union as being retained by the Employer."

bargaining agreement," and vacated the award. The district court acknowledged that the arbitrator discussed past conduct of the parties in reaching his decision, but stated that the arbitrator failed to consider past practices, past negotiations of a disputed clause, and past arbitral decisions, and entered summary judgment in favor of the employer.

DISCUSSION.

The question before this Court is whether or not the district court properly vacated the arbitrator's decision and set aside the award when it granted summary judgment in favor of the employer.

■ A trial court's granting of summary judgment is reviewed *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983).

■ One of the basic principles governing court review of arbitrator's awards is the narrowness of the court's role. Thus, courts should not reexamine the merits of the underlying grievances, nor should they overrule an arbitrator because they disagree with the arbitrator's interpretation of the contract. *Broadway Cab Co-op, Inc. v. Teamsters & Chauffeurs Local 281*, 710 F.2d 1379, 1382 (9th Cir.1983).

In *Broadway Cab Co-Op, supra*, the court stated:

> Under the *Steelworkers Trilogy*, a district court ordinarily engages in only a very limited review of an arbitrator's decision. *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). An award will be upheld provided it "draws its essence from the collective bargaining agreement," *id.* at 597, 80 S.Ct. at 1361; that is, as long as the arbitrator looks to the words of the contract and to the conduct of the parties, ..." *Id.* at 1382.

■ An arbitrator's award is thus entitled to deference in the courts, and the court's review of an award is quite circumscribed.

■ The preceding quoted passage highlights another fundamental principle regarding arbitrator's awards. The award must be drawn essentially from the collective bargaining agreement. In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the Supreme Court stated:

> He [an arbitrator] may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

And, in *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) the Court held that unless an arbitrator's decision does not draw its essence from the collective bargaining agreement "a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous."

In *Pacific Motor Trucking v. Automotive Machinists*, 702 F.2d 176 (9th Cir. 1983), this Court stated: "We enforce an arbitration award if it represents a 'plausible interpretation of the contract in the context of the parties' conduct.' *Id.* at 177, quoting *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers International Union*, 412 F.2d 899, 903 (9th Cir.1969)."

The employer argues that the arbitrator here exceeded his authority and extended the matters in the award beyond the provisions contained in the Agreement. The employer contends that the management rights clause permits the employer to subcontract absolutely unless a provision of the agreement specifically allows otherwise. Since none did so, the employer asserts that the management rights clause is

controlling and was erroneously disregarded by the arbitrator.

As the union argued at the hearing, the crux of the arbitrator's decision was that the 60–40 historical ratio of company to independent workers *was* the contract; the arbitrator found that the long standing practice amounted to part of the Agreement. The inference was that a tacit agreement existed between the parties to leave intact the previous pattern.

■ No express provision prohibiting subcontracting exists in the Agreement. The arbitrator thus resorted to a balancing test to weigh the union's interests as specifically set forth in certain clauses of the Agreement with the employer's interests in subcontracting to the fullest extent possible. The balancing test is appropriate when an agreement is silent on the subcontracting issue. *See e.g., Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 156 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983).

Moreover, despite the district court's comment that the award failed to consider past practices, past negotiations of a disputed clause, and past arbitral decisions, the record shows that the arbitrator in fact did cover those items.

■ To consider whether an award drew its essence from the collective bargaining agreement, the court must ensure that the arbitrator looked to the words of the contract and to the conduct of the parties. *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F.2d 250, 251 (9th Cir.1978). *Accord, Broadway Cab, supra.*

■ In the case at bar the arbitrator did so. He examined the past practices of the parties. He noted that the employer had never before used subcontractors to the complete exclusion of bargaining unit loggers. He clearly based his decision in large part on the employer's undisputed historical practice of maintaining a 60–40 ratio as indicated above. He discussed in his award past arbitral decisions favoring the employer and past negotiations, but found them to be distinguishable since none before had involved a permanent loss of so many bargaining unit positions. Additionally, the arbitrator found that other clauses, such as wages, recognition, union security, and seniority, taken together, constituted an implied covenant that the employer would not seriously erode the bargaining unit by subcontracting. The arbitrator considered the reserved rights theory of management, but rejected it after reviewing the applicable authorities.

The employer emphasizes the union's many past attempts in arbitrations and at the bargaining table to gain limits on the employer's subcontracting and states that the arbitrator rejected this history erroneously. However, the fact that the union had never made inroads at eliminating subcontracting, or having the employer formally concede to limit it, does not mean that no limits at all were implied or understood by the parties.

As the union points out, and as discussed above, the arbitrator thoroughly considered all relevant evidence presented to him. A review of the arbitrator's decision reveals that he carefully analyzed the common law of the industry, looked at past arbitration decisions, and took into account economic considerations.

The district court appears to have disagreed with the conclusions and interpretations of the arbitrator. Given the policy of deferral to arbitration awards, and the narrow standard to be applied permitting only of limited review by the court, this Court reverses the district court's decision. This Court after review cannot say that the arbitrator's award was not a plausible interpretation of the agreement in the light of the parties' conduct. Thus, the district court erred in ruling that the arbitrator exceeded his authority.

Our decision is fully consistent with the Fourth Circuit's decisions in *Clinchfield Coal v. District 28, United Mine Workers*, 720 F.2d 1365 (4th Cir.1983), and *Clinchfield Coal Co. v. District 28, United Mine*

*Workers,* 736 F.2d 998 (4th Cir.1984). In those cases, the collective bargaining agreement permitted subcontracting of coal mining operations unless it caused the layoff of employees. The Fourth Circuit held in those cases that the layoffs did not violate the contract because the subcontracting did not cause the layoffs.

Because this question was relatively close, the Court denies attorney's fees to the union on appeal.

REVERSED.

KILKENNY, Circuit Judge, dissenting:

I respectfully dissent. The majority concludes that the district court improperly substituted its own judgment for that of the arbitrator in vacating the arbitrator's award in favor of the Union. I disagree, for the reason that the majority's disposition misses what I perceive to be the critical question presented by this appeal: When management's decision to subcontract work does not violate the express terms of a collective bargaining agreement and causes no unemployment among bargaining unit workers, should an arbitration award based upon a disregarding of these facts be upheld? I submit that it should not.

The undisputed facts are that the collective bargaining agreement contains a broadly worded management rights clause which clearly grants management the discretion to decide all matters not specifically contained in the agreement. There is nothing in the agreement concerning limitations on management's right to subcontract work. This is consistent with the history of the parties' labor-management relations, since management had always subcontracted some work. Indeed, on three occasions the Union took disputes arising out of such subcontracting practices to arbitration, and on all three occasions management's right to subcontract was upheld.

I believe the reasoning contained in a brace of Fourth Circuit cases, factually similar to this one, to be highly persuasive. In *Clinchfield Coal Co. v. District 28, United Mine Workers,* 720 F.2d 1365 (CA4 1983) (*Clinchfield I*) and *Clinchfield Coal Co. v. District 28, United Mine Workers,* 736 F.2d 998 (CA4 1984) (*Clinchfield II*), the court upheld the district court's decision to vacate an arbitrator's award in favor of laid-off Union miners on the ground that the subcontracting of mining operations *did not cause the unemployment complained of* and therefore did not violate the collective bargaining agreement, which contained a no-subcontracting clause. 720 F.2d at 1369–70; 736 F.2d at 999. *But see George Day Constr. Co. v. Local 354, United Bhd. of Carpenters and Joiners,* 722 F.2d 1471, 1480 (CA9 1984) (employer's unilateral act of withdrawing from multi-employer bargaining unit and subcontracting projects to nonunion workers violated agreement's no-subcontracting clause).[1]

Such is precisely the situation presented by this appeal: Management's decision to subcontract work was made based on purely economic considerations. The Union employees who claim to have been affected were already, and had been for some time, laid-off. No Union workers were added to the unemployment rolls by management's decision, and those already laid-off were not placed in a worse position thereby. Parenthetically, it should be noted that both the *Clinchfield* and *George Day* cases involved agreements with explicit, no-subcontracting clauses; no such clause exists in this case.

While it is not our place to reweigh the merits of the arbitration dispute, we have an obligation to determine whether the arbitration award "draws its essence" from the agreement, *i.e.,* the arbitrator must look to the words of the contract and to the conduct of the parties. *Broadway Cab Coop., Inc. v. Local 281, Int'l Bhd. of*

---

1. Implicit in the court's holding in that case were the apparent beliefs that the employer had not acted in good faith, and that the subcontracting prohibition "lay at the very heart of the employer-employee relationship" and could not be unilaterally disregarded. 722 F.2d at 1480. No such problems are present here.

*Teamsters,* 710 F.2d 1379, 1382 (CA9 1983). Where an arbitrator pays only lip service to the express terms of an agreement as well as to the results of three prior arbitrations involving the same parties and similar claims, while simultaneously imposing rigid quotas which the parties had neither bargained for nor were likely to have agreed to, it cannot be seriously maintained that his award draws its essence from the agreement. What the arbitrator did here was simply to dispense his own brand of industrial justice. *See Pacific Motor Trucking Co. v. Automotive Machinists Union,* 702 F.2d 176, 177 (CA9 1983).

I would adopt the holdings of *Clinchfield I* and *II* as the law of this Circuit, and would vacate the arbitrator's award and affirm the district court.

