836 F.2d 1342
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Willie A. KELLY, Maxie C. Stevenson, Willie J. Stallings,
Timothy W. Flanders, Sheeinee K. Goss, Local 1756,
International Brotherhood of Painters and Allied Trades,
Robert J. McCay, John C. Black, Plaintiffs-Appellants,
v.
E I DUPONT DE NEMOURS, Defendant-Appellee.
 
 No. 86-2181.
 United States Court of Appeals, Fourth Circuit.
 Argued June 2, 1987.
Decided Jan. 8, 1988.
 James Lee Bell (Bell, Thames, Strait & McCall on brief) for appellants.
 Charles Preyer Roberts, III (Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, P.A. on brief) for appellee.
 Before DONALD RUSSELL, WIDENER and JAMES DICKSON PHILLIPS, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 In this case a group of employees ask us to enforce a collective bargaining agreement brought before the court under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. The appellants allege that the company breached the bargaining agreement by laying off the employees out of seniority. The trial court granted the company summary judgment as to five of the employees on the ground that they had failed to follow the internal grievance procedure required by the bargaining agreement before bringing suit. It granted the company summary judgment as to the remaining two employees on the ground that the bargaining agreement permitted the company to lay off employees out of seniority when those employees had active formal reprimands. Finding that there is no genuine issue of material fact, we affirm as to the first five employees. We reverse the summary judgment against the other two employees and remand for further proceeding in accordance with the ruling herein.
 
 I.
 
 2
 For more than thirty years the International Brotherhood of Painters and Allied Trades (the Union) has represented the paint craft employees at duPont's Savannah River plant in South Carolina. The collective bargaining agreement between the Union and duPont is not a single document, but consists of multiple documents negotiated at varying times.
 
 A. Contract Provisions
 
 3
 The Paint Craft--Layoff Seniority document was negotiated in 1962 and revised in 1972. It states that in the event of a layoff:
 
 
 4
 1. Employees in the group to be affected will be reviewed by the Company to determine their suitability to fill the jobs that will remain. Suitability will take into consideration such factors as past performance, ability, specific skills required, safety attitude, etc.
 
 
 5
 2. If, in the judgment of the Company, suitability to fill the remaining jobs is relatively equal, then the order of layoff will be based on [seniority]....
 
 
 6
 The grievance section of the Paint Craft Memorandum of Understanding was negotiated in April 1984. At the time of this dispute it prescribed the following steps for processing grievances:
 
 
 7
 (a) The employee must present his grievance to the Steward within 48 hours after the situation causing the grievance.
 
 
 8
 (b) The Steward will immediately discuss the situation with the employee's foreman; if not resolved with the foreman, then, successively with the General Foreman and the Craft Superintendent.
 
 
 9
 (c) If the grievance is not resolved within seven days by following the steps above, then, the Steward will present the grievance to the Union's Business Representative, in writing, setting forth the facts of the grievance and steps taken to resolve the grievance. A copy of the Steward's written statement will be forwarded to the Employee Relations Superintendent at the same time the statement is sent to the Union Business Representative.
 
 
 10
 (d) The Union Business Representative and the Employee Relations Superintendent shall meet promptly to resolve the grievance.
 
 
 11
 (e) In the event the grievance has not been settled through the above procedure, it shall be submitted to the International President of the Union, or his designated representative, and the representative selected by the Employer for consideration and settlement. There shall be no work stoppage until the grievance procedure has been complied with. Should any unauthorized stoppage occur at any time, the Union will do all in its power to get full progress on the job resumed.
 
 
 12
 Procedure Memorandum No. 22--Formal Reprimand was issued unilaterally by duPont in 1951 but was not agreed to by the Union. It was last revised in 1982. It states that a formal reprimand should be given "only when an incident of major importance or a series of minor incidents results in an unsatisfactory condition, or supervision feels that an employee is not carrying out his/her duties as instructed." A reprimand is intended to be rehabilitative, but if the employee does not take advantage of the opportunity to correct his mistakes he will be discharged. The memorandum contains no express notice of any adverse consequence for a reprimand other than the assurance of discharge if there is no improvement.
 
 
 13
 Procedure Memorandum No. 220--Absenteeism was issued unilaterally by duPont in 1981 and agreed to by the Union. It was last revised in 1984. Under the Reduction of Force section of this memorandum, an employee who has received a formal reprimand for reasons of absenteeism will be considered first for layoff regardless of seniority. This applies only if the employee's absenteeism exceeds 3 percent; employees with absenteeism under 3 percent receive counseling rather than a reprimand and do not have priority for layoffs.
 
 Factual Background
 
 14
 In October 1984 duPont determined that it needed to lay off 12 paint craft employees. It gave the requisite seven days' notice to seven employees whose excess absenteeism gave them priority for layoffs under Procedure Memorandum No. 220. It then gave notice to the five appellants out of seniority order solely because they had active formal reprimands in their files. The Union met with duPont to protest the out-of-seniority layoffs on the ground that they violated the collective bargaining agreement. After the parties failed to settle the dispute, the Union and the individual appellants filed suit in federal district court charging violations of the contract under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. They also filed several state tort counts under the court's pendent jurisdiction.
 
 
 15
 After the suit was filed, duPont laid off two additional paint craft employees out of seniority solely because they had active formal reprimands in their files. The Union again met with duPont and protested these layoffs through the formal grievance procedure. The two employees were later joined by stipulation as plaintiffs in the pending litigation.
 
 
 16
 Upon motions by duPont, the court dismissed the state torts as preempted by section 301, struck the case from the jury docket on the ground that the remaining claims were purely equitable, ruled that the claims of the five original appellants were barred because the union did not file their grievances in writing, and granted duPont summary judgment on the section 301 claims of the remaining two appellants on the ground that there was no genuine issue of fact as to a violation of the seniority agreement. The appellants do not contest the dismissal of the state torts, but they appeal from the remaining orders.
 
 II.
 
 17
 We first address whether the court erred in granting summary judgment against the five original plaintiffs because the Union failed to follow Step (c) of the grievance procedure, which required the grievances to be reduced to writing. It is well established that where the collective bargaining agreement includes a grievance procedure, that procedure is the employee's exclusive remedy and he must attempt to use it. Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965); National Post Office Mail Handlers Local No. 305 v. United States Postal Service, 594 F.2d 988 (4th Cir.1979). The question in the present case is whether we should interpret the Union's failure to reduce the grievances to writing as a failure to comply with the grievance procedure.
 
 
 18
 The parties do not disagree on the facts: the employees brought their complaint to the Union steward, who discussed the problem informally with the craft superintendent. The steward then discussed the problem orally with the Union's business agent, and did not submit a copy to the company. The Union's business agent met with the company officials but they were not able to agree. The company subsequently held another meeting, this time with an international representative from the Union.
 
 
 19
 The Union contends that it followed the substance and timeliness of the grievance procedure, and that its procedural failure to prepare and transmit a written grievance is attributable solely to the fact that it considered this to be an emergency because the layoffs were imminent. The bargaining agreement does not provide for a stay of layoffs during the processing of grievances. The company, on the other hand, contends that it had an "open door" policy under which it was always receptive to informal complaints, and that without written notice it had no reason to consider this as a formal grievance, despite the involvement of outside Union representatives.
 
 
 20
 In deciding this issue the court relied on Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co., 648 F.2d 900 (3d Cir.1981), in which the court upheld summary judgment for the employer following the Union's failure to reduce its grievance to writing as required by the collective bargaining agreement. The court there held that a provision requiring the grievance to be in writing was substantive, not a mere procedural formality.
 
 
 21
 Although we agree that under the facts of the present case the Union did not comply with the grievance procedure when it failed to reduce this grievance to writing, we reject Philadelphia Printing to the extent that it establishes a per se rule. See Becton Dickenson v. District 65, United Automobile Workers, 799 F.2d 57 (3d Cir.1986) (other factors in addition to failure to reduce the grievance to writing contributed to the decision in Philadelphia Printing); Washington Hospital Center v. Service Employees International Union, Local 722, 746 F.2d 1503, 1511 (D.C.Cir.1984) (Philadelphia printing is contrary to Supreme Court precedent); Automotive, Petroleum and Allied Industries Employees Union v. Town and Country Ford, 709 F.2d 509 (8th Cir.1983) (rejecting rationale of Philadelphia Printing). We find significant in the present case the fact that the parties had negotiated the relevant portion of the grievance procedure very recently, and that they intended to emphasize a change from the company's past practice of allowing the Union to present its grievances orally.[1] We further find significant the fact that the Union's business agent, who is experienced and knowledgeable about processing grievances, was responsible at least in part for the failure to reduce this grievance to writing. Had less experienced employees been wholly responsible for the failure to comply with this contract provision, we might find this justification for this failure would be a more appealing claim.
 
 
 22
 The Union contends that even if it were required to reduce the grievance to writing, the company waived this requirement by knowingly continuing through the subsequent steps of the prescribed grievance procedure. The Union's business agent met with company officials as described in Step (d), for example. At the conclusion of that meeting, after the parties had been unable to agree, the business agent said that he needed to go to the next step. The company then arranged for and met with an international representative of the union, as specified in Step (e), which at that time was the final step of the grievance procedure.
 
 
 23
 We agree with the court that this conduct by the company does not rise to the level of a waiver. Going to successively higher levels is the normal way that a company attempts to solve all disputes, and mere conformance with this ordinary business procedure cannot reasonably be construed as a waiver of the company's right to receive written notice of the exact nature of the dispute and the fact that the Union is treating it as a formal grievance.
 
 
 24
 In summary, we find that under the facts of this case the Union's failure to reduce the grievance to writing constituted a failure to use the grievance procedure. We further find that the company did not waive this requirement. We therefore affirm the court's summary judgment against the five original plaintiffs on the ground that there is no genuine issue of fact regarding their failure to use the prescribed grievance procedure.
 
 III.
 
 25
 The two remaining appellants followed the formal grievance procedure, which brings us to the merits of their claim that the company breached the collective bargaining agreement when it laid them off out of seniority.
 
 
 26
 It is well settled that in labor contracts, unlike industrial contracts, the party construing the contract--whether it be a labor arbitrator or a court--is not confined to the express provisions of the contract. The practices of the industry and the shop are equally a part of the collective bargaining agreement, even if they are not expressed in it. Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960). The common law of the particular industry or shop is an integral part of the contract. Clinchfield Coal Co. v. District 28, United Mine Workers, 720 F.2d 1365, 1368 (4th Cir.1983) (Clinchfield I). It is uncontroverted that during the 22 years after the layoff seniority agreement was negotiated, the company had never used the mere existence of a formal reprimand (as distinguished from the conduct that gave rise to that reprimand) as a basis for out-of-seniority layoffs. The record shows that over the years layoffs were frequently imposed, usually several times each year, and other employees who had active formal reprimands at those times were not laid off out of seniority merely because of the existence of these reprimands. Given the very long history of this unvarying practice and the frequent opportunities the company had had to reconsider it, we are unable to view this practice as anything other than the "law of the shop." See Clinchfield Coal Co. v. District 28, United Mine Workers, 736 F.2d 998 (4th Cir.1984) (Clinchfield II); Norfolk Shipbuilding and Drydock Corp. v. Local No. 684, International Brotherhood of Boilermakers, 671 F.2d 797 (4th Cir.1982). It was indisputably the "law of the shop" at duPont that the existence of a formal reprimand--standing alone--was not a sufficient basis for layoffs out of seniority.[2]
 
 
 27
 In coming to a contrary conclusion, the court below relied on Palancia v. Roosevelt Raceway, Inc., 551 F.Supp. 549 (E.D.N.Y.1982), aff'd without opinion, 742 F.2d 1432 (2d Cir.1983). In that case the court upheld the company's discharge of an employee who had failed to renew his state-mandated annual license, despite the fact that it was the company's long-standing practice merely to lay off such employees until they renewed their licenses. Because of critical factual differences, however, Palancia is inapplicable to the present situation.
 
 
 28
 In Palancia, the discharged employee had gone without a license for more than twice as long as any previous employee. Assuming that there was a "law of the shop" in Palancia governing the treatment of employees with short-term lapses in licensure, this "law" did not necessarily govern the company's treatment of employees with long-term lapses in licensure. In the present case, by contrast, the record is silent on the comparative nature of the employees' offenses.[3] If the formal reprimands of the two remaining appellants were for conduct generally no more egregious than that in past incidents where employees were not laid off out of seniority, the "law of the shop" precludes the employer from laying off these appellants out of seniority merely because of the existence of the formal reprimands. This is a question of fact. Therefore, the court erred in granting summary judgment against these two appellants.
 
 
 29
 Upon trial, the court should recognize that there is a distinction to be made between the mere existence of a formal reprimand and the conduct that prompted the reprimand. Even if the "law of the shop" governs, the employer may still look behind the formal reprimand and consider the conduct that gave rise to it. The layoff seniority agreement expressly allows the employer to take into consideration factors such as "past performance, ability, specific skills required, safety attitude, etc." in determining the relative suitability of employees for the jobs that will remain.[4] If the conduct that gave rise to the formal reprimand is also a manifestation of poor past performance, lack of attention to his job, lack of ability, lack of specific skills required, poor attendance, or an unsafe attitude, etc., the employer may properly take that conduct into account in determining an employee's relative suitability for the jobs that will remain.
 
 IV.
 
 30
 The final issue presented on appeal is whether the court properly struck this case from the jury docket after it dismissed the state tort counts. We find no error in the court's conclusion that the remaining section 301 claims were purely equitable, and thus not subsequent to trial by jury, because the only relief they permitted was restoration of the status quo ante (i.e., reinstatement with seniority and back pay).
 
 
 31
 The appellant calls our attention to Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4th Cir.1965), in which we allowed a jury trial for a section 301 claim. In Simmons, however, the damages sought were for injury to reputation and the resulting mental anguish. These kinds of injuries clearly call for the legal remedy of money damages. In the present suit, by contrast, the appellants offer no reason why their surviving section 301 claim for reinstatement and back pay is not purely equitable. Contrary to the appellants' argument, the court's denial of a jury trial was not based on the fact that this was a section 301 claim but on the fact that the underlying nature of this particular claim was equitable.
 
 
 32
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 In many cases an employer does not know the exact nature of the grievance until it is reduced to writing. In such circumstances the requirement of a written grievance should be given great weight. In the present case, however, there was no confusion about the nature of the dispute so we need not consider this factor
 
 
 [2]
 duPont and the Union had negotiated a separate agreement regarding the effect of formal reprimands for absenteeism. Our decision here does not disturb Procedure Memorandum No. 220, in which the parties agree that the existence of a formal reprimand for excess absenteeism is sufficient reason, per se, for layoffs out of seniority
 
 
 [3]
 Because serious violations would probably result in discharge rather than reprimand, it is unlikely that there was a qualitative difference between the conduct of the appellants and the conduct that led to formal reprimands in the past
 
 
 [4]
 We will not consider the scope of the term "etc." beyond noting that its presence shows the list of factors to be nonexclusive