MICHIGAN MUTUAL INSURANCE COMPANY; American Hardware Mutual Insurance Company; Prudential LMI Commercial Insurance Company, Plaintiffs–Appellees,

v.

UNIGARD SECURITY INSURANCE COMPANY, Defendant–Appellant.

No. 92–36804.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1994.

Decided Jan. 11, 1995.

As Amended Feb. 8, 1995.

827

Stephen D. Holz, Musick, Peeler & Garrett, Los Angeles, CA, for defendant-appellant.

Michael R. Hassan, Lord, Bissell & Brook, Chicago, IL, for plaintiffs-appellees.

Before: TANG, BOOCHEVER, and REINHARDT, Circuit Judges.

Opinion by Judge BOOCHEVER.

Dissent by Judge REINHARDT.

BOOCHEVER, Circuit Judge:

Unigard Security Insurance Company ("Unigard") appeals the district court order confirming an arbitration award entered in proceedings between it and appellees, Michigan Mutual Insurance Company, et al. ("Retrocessionaires"). Unigard claims that the part of the award setting forth conditions precedent to the Retrocessionaires' obligation to reimburse Unigard should be vacated because the arbitration panel exceeded its authority and imposed conditions that do not draw their essence from the parties' contract. Unigard also asks us to vacate as irrational and in "manifest disregard of the law" the panel's decision to remove any obligation of Retrocessionaires to pay on certain future claims. We affirm.

## BACKGROUND

Unigard was a reinsurer of primary insurance companies. Reinsurance occurs "when one insurer (the 'ceding insurer' or 'reinsured') 'cedes' all or part of the risk it underwrites, pursuant to a policy or group of policies, to another insurer" (the "reinsurer"). *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 4 F.3d 1049, 1053 (2d Cir.1993). The reinsurer indemnifies the ceding insurer on the risk transferred, thereby diversifying the risk of loss. *Id.* A "retrocession" occurs when a reinsurer in turn cedes to yet another reinsurer a portion of the exposure insured. Robert H. Jerry, *Understanding Insurance Law*, § 140[a], pp. 683–84 (1987). The second reinsurer is then known as a "retrocessionaire." *Id.*

When Unigard decided to leave the reinsurance business, it entered into a contract with the Retrocessionaires whereby the Retrocessionaires reinsured 100% of Unigard's net retained liability under hundreds of reinsurance contracts. The agreement between Unigard and the Retrocessionaires is known as the Quota Share Retrocessional Contract ("QS contract").

Various disputes arose between Unigard and Retrocessionaires over the terms and interpretation of the QS contract. Pursuant to an arbitration clause in the QS contract, the parties submitted the disputes to binding arbitration.[1] The panel issued an award, which Unigard contests in part.

The first dispute before us involves reinsurance coverage that Unigard had procured for itself prior to its agreement with Retrocessionaires, under an agreement called the Intere Casualty Retrocessional Excess of Loss Reinsurance Agreement ("INCARE"). Under this agreement, when a claim was submitted to Unigard, Unigard would cover the first $100,000 in losses, then INCARE would cover the next $900,000 in losses. When Retrocessionaires reinsured Unigard, it assumed Unigard's liability under contracts reinsured by INCARE. It thus appears that Retrocessionaires reinsured Unigard for its liability to pay the first $100,000 of a claim covered by INCARE, its contingent liability to pay the next $900,000 in the event INCARE did not pay,[2] and any excess liability.

The QS contract between Unigard and Retrocessionaires did not address whether Unigard or Retrocessionaires would initially pay (i.e. "front" the money) on claims ultimately covered by INCARE. Because there was often a delay in obtaining reimbursement from INCARE, a dispute arose concerning which party was obligated to front the payments. This issue was submitted to the arbitrators along with another disputed point under the INCARE contracts: the question of which party would bear the risk in case of INCARE's insolvency. In Decision Statement 3 of the panel's award, the panel decided that Unigard was obligated to front the payments, but that Retrocessionaires would bear the risk of INCARE's insolvency and would therefore be obligated to reimburse Unigard for fronted payments under certain conditions.

According to the decision, the conditions precedent to Unigard's reimbursement by Retrocessionaires for INCARE claims were that "[Unigard shall] consult with [Retrocessionaires], and obtain [Retrocessionaires'] agreement as to the applicability of the underlying primary policy coverage, and as to [Unigard's] and [Retrocessionaires'] liability therefor, and as to the proposed payment amount, for any loss which [Unigard] proposes to pay that is subject to the quota share

---

1. The arbitration clause stated in pertinent part:
   [A]ny dispute arising out of this Agreement shall be submitted to the decision of a Board of Arbitration.... The Board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The Board shall issue its decision including the reasons therefor in writing based upon a hearing in which evidence may be introduced without following the strict rules of evidence but in which crossexamination and rebuttal shall be allowed.... The majority decision of the Board shall be final and binding upon all parties to the proceeding and judgment thereon may be entered by any court of competent jurisdiction.

2. This contingent liability was contested in the arbitration proceeding, where the arbitration panel found that Retrocessionaires did bear the risk should INCARE fail to pay. Retrocessionaires do not contest this determination.

treaty." Unigard challenges the imposition of these conditions precedent.

The second dispute before us involves five Unigard reinsurance contracts with International Surplus Lines Insurance Company ("INSLIC"). Unigard reinsured INSLIC and was then itself reinsured for its INSLIC obligations by Retrocessionaires, under the QS contract. Initially, Retrocessionaires routinely paid claims submitted to them by Unigard under the INSLIC contracts. Then Retrocessionaires learned that Unigard had been involved in a dispute with INSLIC, had stopped payments to INSLIC for a period of time, and ultimately had engaged in arbitration proceedings with INSLIC. The result of that arbitration was an agreement by Unigard to pay INSLIC $1.5 million, which Unigard submitted to Retrocessionaires as a claim covered by the QS contract.

Retrocessionaires sought an explanation of Unigard's dispute with INSLIC and information about the Unigard/INSLIC arbitration proceedings, because that dispute might have an effect on Retrocessionaires' liability under the INSLIC contracts. Unigard refused to provide requested information about its reasons for stopping payment to INSLIC or about the issues and claims made in the Unigard/INSLIC arbitration proceedings. Retrocessionaires therefore sought to rescind their acceptance of the INSLIC contracts. Conversely, Unigard sought an order declaring Retrocessionaires' continuing obligation to pay for INSLIC claims and ordering Retrocessionaires to pay the existing $1.5 million claim owed by Unigard to INSLIC.

At the Unigard/Retrocessionaires arbitration hearing, the panel requested from Unigard the information about its interactions with INSLIC, because of the effect the desired information could have on the validity of the QS contract. The panel even extended the hearing for possible admission of the information. Unigard declined to provide any further materials.

The panel found that Unigard was in breach of the QS contract with respect to the INSLIC contracts. Because information about the disputes between Unigard and INSLIC might be relevant to Retrocessionaires' obligation to reimburse Unigard, Unigard's failure to provide relevant information concerning that obligation violated the duty Unigard owed to Retrocessionaires to act in good faith.[3] The panel concluded that the lack of information prevented it from determining whether the QS contract should be rescinded as to the INSLIC contracts. It nonetheless sought to provide an appropriate remedy for Unigard's breach of contract. Decision Statement 6(c) states:

> The Board ... DIRECTS AND ORDERS that [Retrocessionaires] shall be relieved of [their] retrocessional obligation to [Unigard] with respect to any and all other INSLIC claims for which [Unigard's] obligation to pay INSLIC has arisen or might arise after the date on which the last actual payment of an INSLIC retrocessional claim was made by [Retrocessionaires].

The panel further explained that it would not grant Unigard's request for an order that Retrocessionaires were obligated to continue paying claims made under INSLIC, stating

> that any award that would affirm an obligation of [Retrocessionaires] to pay part or all of the current specific retrocessional loss amounts claimed by [Unigard] or any other and future potential INSLIC retrocessional losses that have yet to be claimed would ... constitute a species of pecuniary harm to [Retrocessionaires], and which harm would be as a direct result of [Unigard's] breach of express and implied conditions precedent.

Unigard and Retrocessionaires interpret the panel's award as terminating Retrocessionaires' future liability for INSLIC claims. Unigard challenges this portion of the award as irrational and in manifest disregard of the law because this relief is, in practical effect, better than the rescission that the panel found it lacked the information to grant. (Had the contract been rescinded, Retroces-

---

**3.** The relationship between insurers and reinsurers has historically been one which requires the exercise of "utmost good faith" by both parties. *See Unigard Sec. Ins. Co. v. North River Ins. Co.,* 4 F.3d 1049, 1054 (2d Cir.1993). The panel found that Unigard was subject to such a duty of good faith in its dealings with Retrocessionaires.

sionaires would have had to return large premium payments to Unigard.)

Retrocessionaires filed a petition in the district court for an order confirming the arbitration award and Unigard raised its objections to the award. The district court confirmed the award, finding that no part of the award was in manifest disregard of the law. We review the district court's confirmation of an arbitration award de novo. *Employers Ins. of Wausau v. National Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir. 1991).

## DISCUSSION

### I. *The INCARE Award*

Unigard asks us to vacate Decision Statement 3(b)(4), which sets forth the conditions precedent to Unigard's reimbursement for payments fronted under the INCARE contracts.

#### A. *The Scope of the Submission*

Unigard first argues that the arbitration panel exceeded the scope of its authority when it imposed the conditions precedent by ruling on a matter not submitted to it.

■ When arbitrators rule on a matter not submitted to them, or act outside the scope of the parties' contractual agreement, the award may be overturned because the arbitrators exceeded the scope of their authority. 9 U.S.C. § 10(a)(4) (1990) (arbitration award may be vacated "where the arbitrators exceeded their powers"); *Coast Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir.1982). *See also Western Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261–62 (9th Cir.1992) (as amended) (arbitration panel exceeded its authority in deciding that it did not need to make findings of fact and conclusions of law as required by the contract between the parties, because the refusal meant plaintiff was required to arbitrate according to terms for which it did not bargain).

■ Unigard argues that the panel ruled on a question not submitted to it because neither party explicitly requested that the panel establish conditions to reimbursement.

The only relief specifically requested was rescission or enforcement of the QS contract obligations. When the panel determined the payment relationship between Unigard and Retrocessionaires and found that Unigard was obligated to front payments and that Retrocessionaires were obligated to reimburse Unigard, however, the question of when and how Unigard would be reimbursed necessarily arose out of their decision. Thus, although neither party specifically addressed this question in its submission to the panel (because each party hoped that the other would be both obligated to front the payments and ultimately liable in case of INCARE's insolvency) the parties must have been aware that an award of partial relief would put the question before the panel. Thus, the question of the conditions of reimbursement was implicit in the submission.

This case is distinguishable from cases such as *Coast Trading* and *Western Employers Insurance*. In those cases, the arbitrators' inquiry, procedures, or remedies were specifically limited by the parties' arbitration agreement. In *Coast Trading*, for example, the arbitrators were limited by the contract to a specified remedy, 681 F.2d at 1198, and in *Western Employers Insurance*, the parties' contract specifically called for the panel to include findings of fact and conclusions of law in its decision, 958 F.2d at 259. Thus, when the arbitrators strayed from the limitations imposed by the parties, they exceeded their powers. Here, however, the QS contract did not preclude the arbitration panel from resolving issues implied in the submission and did not limit the form or content of the award.

Accordingly, the panel did not improperly address matters not within the parties' submissions.

#### B. *Essence of the Contract*

■ Unigard next argues that Decision Statement 3(b)(4), which imposes the conditions precedent to Unigard's reimbursement, should be vacated because the QS contract makes no mention of such conditions and thus the decision statement does not "draw its essence" from the QS contract. An arbitration award may be overturned if it does

not " 'draw its essence' " from the contract. *Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 527 (9th Cir.1987) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

"To consider whether an award drew its essence from the ... agreement, the court must ensure that the arbitrator looked to the words of the contract and to the conduct of the parties." *Edward Hines Lumber Co. v. Lumber and Sawmill Workers Local No. 2588*, 764 F.2d 631, 635 (9th Cir.1985). *See also Riverboat Casino*, 817 F.2d at 527 (suggesting that an award does not draw its essence from the contract if the arbitrators exceeded their powers in crafting the award, if the award is contrary to public policy, or if the arbitrators acted in manifest disregard of the law); *Enterprise Wheel and Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361 (where arbitrator's award was arguably based on interpretation of the collective bargaining agreement viewed in light of the law and not simply "based solely upon the arbitrator's view of the requirements of enacted legislation," award could be found to draw its essence from the contract).

In this case, the QS contract gave the arbitration panel broad powers to fashion relief for issues submitted to it. The QS contract provides for the parties to submit "any" dispute to arbitration, and contains no limitation on the kinds of relief the arbitration panel may award. Because the parties' arbitration clause does not limit the panel's power to resolve issues presented to it, the panel had the authority to settle and determine the dispute appropriately. *See* Samuel W. Eager, *The Arbitration Contract and Proceedings*, § 121, p. 316 (1971) (when arbitrators are not limited by the terms of the arbitration agreement, they are normally "empowered to grant any relief reasonably fitting and necessary to the final determination of the matter submitted to them"). *Cf. Hotel and Restaurant Employees & Bartenders Int'l Union v. Michelson's Food Serv., Inc.*, 545 F.2d 1248, 1254 (9th Cir.1976) (arbitrator's "job is to define the relief that will compensate the grievant if his claim is upheld").

■ Thus, the panel's award can be said to have drawn its essence from the QS contract. The award addressed the conditions under which Unigard would be entitled to reimbursement for monies fronted for INCARE claims in response to Unigard's submission requesting a determination of Retrocessionaires' liability. Because the arbitration panel was implicitly empowered by the QS contract to formulate appropriate relief for any dispute submitted to it, the award drew its essence from the QS contract. *See Sheet Metal Workers Int'l Ass'n v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir.1988) ("as long as the arbitrator[s are] even arguably construing or applying the contract and acting within the scope of [their] authority, that a court is convinced that [they] committed a serious error does not suffice to overturn [their] decision" (internal quotation omitted)).

### C. *Varying the Terms of the Contract*

■ Unigard further argues that the panel exceeded its authority when it articulated the conditions under which Unigard would be reimbursed for INCARE claims because the conditions contradict the terms of the QS contract. Unigard argues that the conditions precedent shift administrative responsibilities from Retrocessionaires' manager, Cal Re, to Unigard, thereby altering the terms of the QS contract.

Prior to entering into the QS contract, Unigard entered a management agreement with Cal Re. Pursuant to this agreement, Cal Re managed Unigard's reinsurance business.. When Unigard contracted with Retrocessionaires to take over its reinsurance business, the Cal Re/Unigard contract was incorporated in the Unigard/Retrocessionaires QS contract. Thus, Cal Re now manages the reinsurance business Retrocessionaires took over from Unigard and is contractually obligated to perform "all the necessary administrative, underwriting, accounting and claims functions with respect to the subject reinsurance business."

There is considerable ambiguity surrounding the role of Cal Re in the Unigard/Retrocessionaires relationship. For example, at various times Retrocessionaires stated that Cal Re was "the Retrocessionaires' manager," and that Cal Re played a "dual role" because it was Unigard's manager, but solely for Retrocessionaires' benefit.

Under these circumstances, the panel could have found that Cal Re, which had in fact contracted with Unigard to manage Unigard's reinsurance business, had a dual role as Unigard's as well as Retrocessionaires' manager, and that nothing in the Cal Re/Unigard contract or in the Unigard/Retrocessionaires contract prohibits Unigard, *through* Cal Re, from fulfilling any of the conditions required by the Board. Interpreted as such, the conditions precedent would neither vary the terms of the QS contract, nor shift obligations from Retrocessionaires to Unigard. Because this interpretation of the contractual obligations under the QS contract is "plausible," it will not be vacated.[4] *Employers Ins.,* 933 F.2d at 1486. *See also Sheet Metal Workers,* 863 F.2d at 653.

## II. *The INSLIC Award*

■ Unigard argues that we should vacate the arbitration panel's decision to relieve Retrocessionaires of any future obligation to reimburse Unigard under the INSLIC contracts because that decision was completely irrational and was made in manifest disregard of the law. *See Todd Shipyards Corp. v. Cunard Line Ltd.,* 943 F.2d 1056, 1060 (9th Cir.1991) (if an arbitration award is completely irrational or in manifest disregard of the law, it may be vacated). "Manifest disregard of the law" means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. *Thompson v. Tega–Rand Int'l,* 740 F.2d 762, 763 (9th Cir.1984) (per curiam). It must be clear from the record that the arbitrators recognized the applicable law and then ignored it. *See Advest, Inc. v. McCarthy,* 914 F.2d 6, 9 (1st Cir.1990); *Marshall v. Green Giant Co.,* 942 F.2d 539, 550 (8th

Cir.1991); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986).

In this case, the arbitration award is somewhat surprising because its effect is to put Retrocessionaires in a better position than that in which they would have been had the panel awarded the contract rescission requested by Retrocessionaires. We cannot conclude, however, that the arbitrators' award was either completely irrational or in manifest disregard of the law.

First, neither party contends that the issue of Retrocessionaires' future liability was not within the submission to the panel. Unigard specifically requested from the panel an order that Retrocessionaires were generally "obligated to pay losses under the INSLIC treaties," as well as an order that Retrocessionaires should reimburse Unigard for losses already incurred. Thus, Unigard requested a declaration of Retrocessionaires' future obligations.

■ Next, the panel's decision was not irrational. Although the panel did not have the information to determine whether a rescission was merited under the circumstances, Unigard was the party responsible for its lack of information. Further, the panel *could* determine that Unigard's refusal to divulge the information requested by Retrocessionaires constituted a material breach of contract. One remedy for a material breach of contract is to allow the non-breaching party to treat the contract as at an end, terminating any duty of counterperformance owed by the non-breaching party. *See American Hosp. Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 599 (7th Cir. 1986) ("If you commit a material breach of contract, the other party can walk away from the contract. . . ."). This is essentially the remedy reached by the arbitration panel. Thus, the panel's award is not irrational, even though rescission of the contract ultimately would have been more favorable to Unigard.

---

4. We note that the arbitration panel found that the parties were required to act with good faith toward one another, and thus that Retrocessionaires cannot arbitrarily or unreasonably withhold the agreement Unigard is required to seek.

Finally, the panel's decision was not made in manifest disregard of the law. Unigard argues that the law is clearly established that damages are not recoverable unless the amount of damages can be calculated with reasonable certainty. Unigard contends that the panel acted in manifest disregard of the law when it awarded "damages" (the bar against future claims) based on its speculation about the effect of the withheld information.

Unigard's claim is incorrect. The panel found a breach of contract and fashioned an appropriate remedy. It did not award *damages* or speculate as to the amount of damages Retrocessionaires should receive. Instead, it determined that the appropriate remedy for Unigard's breach was to excuse Retrocessionaires from future performance. This award is not irrational. It is an appropriate equitable remedy in a situation in which the extent of legal damages is incalculable.

The decision of the district court confirming the arbitration award is AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

I dissent from the majority opinion because I believe that the panel incorrectly interpreted the arbitrator's award. While the language is concededly unclear, I believe that there is a logical interpretation that may be given to the arbitrator's award that effectively obviates any need to examine its rationality under the standards articulated by this court. See *Todd Shipyards Corp. v. Cunard Line Ltd.*, 943 F.2d 1056, 1060 (9th Cir.1991).

I disagree with the majority's decision to interpret the award to relieve the Retrocessionaires of all future obligations. Even if the majority correctly found that the award, as the majority construes it, is not in manifest disregard of the law, such a construction at the very least renders the award an absurd, even a bewildering decision. I cannot accept that the arbitrators were so lacking in common sense and legal knowledge that they would have intended the award to be so construed.

Instead, I believe that we should find that the award merely denied Unigard's request for payments under the INSLIC contract—that is, the arbitrators rejected Unigard's request for an order declaring the continuing obligation of the Retrocessionaires to pay for INSLIC claims and structured the award to create an incentive for Unigard to share the information necessary for a rescission inquiry. Three grounds support a finding that the award does not bar Unigard from seeking recovery for claims that may arise in the future if it presents the appropriate information relating to those claims in a timely manner.

First, and most important, the arbitrators allowed the Retrocessionaires, and the Retrocessionaires alone, to reopen to seek rescission. There would be no reason to provide such a remedy for the Retrocessionaires *unless* Unigard had the right to file claims in the future. If Unigard were barred from filing claims in the future, the Retrocessionaires would be better off doing nothing than they would be if they sought rescission, and the provision of this remedy would be nonsensical. Indeed, Decision Statement 6(a) & (e), as well as the "Reasons" justification for the award, make clear that the arbitrators believed that a discussion about the Retrocessionaires' right to rescind the contract would arise in the future. There would be no justification for such a belief if the arbitrators intended the award to bar all future claims.

Second, the arbitrators barred Unigard's claim because they found that, due to Unigard's recalcitrance, there was insufficient evidence to support the Retrocessionaires' request for rescission. There is no reason at all to assume that Unigard's failure to provide the information necessary for the specific claims at issue in this proceeding should forever bar it from raising claims in the future (assuming that it presents the appropriate information when it raises them).

Finally, it would make little sense for the arbitrators explicitly to decline to determine whether rescission should take place but then to award the Retrocessionaires a remedy that exceeds the award that they would have received had the appropriate information

been presented and had that information favored their request for rescission. Indeed, such an interpretation of the award contravenes the explicit language in Decision Statement 6(a), which concerns the arbitrators' decision not to grant or deny the Retrocessionaires' request for rescission. Decision Statement 6(a) specifically states that subsections (b) and (c) represent "more limited findings in [the Retrocessionaires'] favor." One could hardly characterize a decision to relieve the Retrocessionaires of all future obligations, an award that would exceed the Retrocessionaires' request for rescission, to be "more limited" than a decision not to address the rescission question itself. Taken together, subsections (a) and (c) suggest that the arbitrators relieved the Retrocessionaires of all current obligations to pay for future claims unless and until Unigard presents the information necessary for a determination of the rescission question.[1]

The interpretation outlined above represents, I believe, the only reasonable construction of the award. It represents a fair and rational solution to the disagreement presented to the arbitrators, and it obviates any need to determine whether the award is in "manifest disregard of the law." Accordingly, I believe that the majority, like the district court, erred in interpreting the award; it should instead have adopted the only possible rational construction of the award and affirmed the district court's decision on that basis.

---

1. Indeed, the language of the "Reasons" section notes that the arbitrators *"sought to structure* [their] INSLIC decisions so that the denials of relief to Cedant ... can only be reopened ... in a *subsequent arbitration proceeding for rescission* ... and only on the basis of *new facts* as countenanced by 6.a. and 6.e. above" (emphasis added).