Edwabd Goodell, J.
This is an action to foreclose a mechanic’s lien based upon services performed and materials furnished *41 by the plaintiff in connection with painting and paperhanging for the defendant.
The defendant bonded the lien, filed on June 10, 1968, by executing and filing a court-approved surety undertaking, dated October 9,1968, for the sum of $5,950 in accordance with orders dated October 3, 1968, and March 17, 1969, respectively, fixing the amount of the undertaking and discharging the lien of record. The plaintiff did not supplement his complaint.by adding a cause of action to recover upon the undertaking and joining the surety as a party defendant. The action proceeded to trial on the original pleadings as more particularly defined by an itemized statement, dated March 24, 1969, furnished by the plaintiff pursuant to a demand made by- the defendant in accordance with section 38 of the Lien Law.
The background relevant to the questions of fact and issues of law in this case is the following:
During 1967, the defendant purchased two six-room co-operative apartments located on the 12th floor of 180 Bast 79th Street. His objective was to convert one of the apartments into an eight-room apartment for the living quarters of himself and his family, leaving the remaining rooms of the two apartments for rental purposes. This conversion of the two apartments required a considerable amount of demolition, reconstruction and decoration.
Leona Kahn, a well-known decorator, was engaged by the defendant. Bids were then sought for the job of painting and paperhanging in accordance with specifications prepared by Mrs. Kahn. Three bids were submitted, one of which was higher and one of which was lower than the plaintiff’s bid.
The plaintiff’s bid, dated February 9, 1968, was accepted by the defendant in writing and the plaintiff began the rendition of his services on March 14, 1968. His services ended 28 working days later on April 22, 1968, prior to the completion of the job of painting and paperhanging. The defendant then engaged another painter, John Weidl, to finish the work and to do over part of the work that had been done by the plaintiff, at a claimed cost of $11,147.85.
In this action the plaintiff seeks an adjudication that he has a valid lien for $5,482.10, representing the unpaid balance of the contract price plus extras and sales tax totaling $7,982.10 less a deposit of $2,500 paid by the defendant, and, in addition, a personal judgment against the defendant for the same amount.
The defendant has counterclaimed for $9,312.85 based in part on the claim that he engaged another contractor to correct and *42 complete the plaintiff’s work and in part on the ground that the plaintiff willfully exaggerated his claim and that in accordance with sections 39 and 39-a of the Lien Law the lien is void and damages are recoverable for willful exaggeration.
1. The defendant claims that the plaintiff’s rendition of services terminated on April 22, 1968, because of a dispute over the quality of the plaintiff’s work. The plaintiff claims that he was discharged not because of dissatisfaction with his work but because he rejected the defendant’s request that he accept in payment for his services a check of a corporation with which the defendant is associated instead of a personal check.
On that issue I find that the defendant discharged the plaintiff because he was dissatisfied with the quality of the plaintiff’s work.
One persuasive consideration with respect to this issue is the fact that the defendant engaged another painter at an initial cost of $8,400 not only to finish the work but also, as noted, to redo part of the work that had been performed by the plaintiff. In terms of probabilities, both the facts that the plaintiff’s successor was hired in substantial part to do the job over and at a very substantial cost, support the conclusion that the motivation for the termination of the plaintiff’s engagement was dissatisfaction with the work rather than disagreement about the kind of check to be given to the plaintiff.
It should be added here with reference to the termination of the job that despite the defendant’s dissatisfaction with the plaintiff’s work, it appears to be the position of the defendant that he did not discharge the plaintiff but that, instead, it was the plaintiff who decided not to continue with the work. On this aspect of the matter, the record, in my view, supports the finding that the plaintiff was discharged by the defendant because the plaintiff’s work was unsatisfactory to him.
In this connection I note that the record establishes a conversation between the decorator, Leona Kahn, and the plaintiff on April 22, 1968, during the course of which she either instructed him in substance not to do any more work or advised him that he would not go ahead with the job and the plaintiff replied in substance that he would not stop without a direction from the defendant. In terms of probabilities I think it is a fair inference to conclude that the decorator would not have made either statement, particularly in view of the fact that she had not recommended the plaintiff’s engagement, without having previously received an intimation from the defendant that he intended to terminate the plaintiff’s employment. The coincidence of the *43 termination of the plaintiff’s employment within less than 24 hours after that conversation supports the finding that the defendant had reached the decision that the plaintiff’s services must be terminated because of his dissatisfaction with his work.
2. This leads to the question of whether the defendant’s dissatisfaction with the plaintiff’s work is a defense.
Absent agreement to the contrary, there are two types of cases relating to the question of satisfactory performance:
One class involves cases where an act is to be performed to the satisfaction of an individual; the customary examples of which are the painting of a portrait or the making of a suit.
In this category, if performance does not satisfy the individual, he can reject it.
The other division deals with satisfactory performance in terms of the reasonable man, as in the instances of the erection of a fence or the repair of a boiler. In such a situation, performance is proper if it would satisfy a reasonable person under the circumstances. (See Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387; Greenberg v. Lumb, 129 N. Y. S. 182; Patterson v. Alabama Vermiculite Corp., 149 F. Supp. 548.)
The distinction between the two groups of cases appears to revolve around the difference in concepts between an end product whose appeal is dominantly esthetic and one that is essentially functional. In the former case the satisfaction to be served is primarily subjective in character, a matter of personal taste, while in the latter instance the likes or dislikes of the individual to be served are irrelevant, the criterion being the objective judgment of that symbolic figure, the reasonable man.
The defendant’s position in this case, as indicated by the proposed findings of fact submitted to the court, is that his satisfaction was to be served. The seventh proposed finding states in part “ That a, substantial portion of the work which plaintiff performed in said apartment was not performed to the satisfaction of the defendant Hochman ’ ’.
Here it is not necessary to decide whether this case fits into one of these two categories or whether it falls into a grey area in between, because the parties agreed upon the applicable standard of performance. In the written proposal submitted by the plaintiff, dated February 9,1968, which the defendant accepted in writing, it was provided in part that the “ Work will be completed in the best workmanship manner by union skillful craftsmen.”
While it might have been argued in the absence of a standard adopted by the parties that the painting and papering of the *44 defendant’s apartment should have been satisfactory to him, the-fact is that he subscribed to a different standard of performance, namely “ the best workmanship manner by union skillful craftsmen.” As was said in Duplex Safety Boiler Co. v. Garden (101 N. Y. 387, 390, supra), “ Another rule has prevailed, where the object of a contract was to .gratify taste, se^ve personal convenience, or satisfy individual preference. In either of these cases the person for whom the article is made, or the work done, may properly determine for himself — if the other party so agree — whether it shall be accepted.”
Here the other party did not so agree. Instead of performance measured by the defendants satisfaction, the parties agreed ! upon an objective contractual standard.
It should not be inferred from this discussion that I question the sincerity of the defendant’s dissatisfaction. The problem, as I see it, is that the defendant’s dissatisfaction stemmed from a subjective standard of performance while his commitment was to another standard. ¡
The defendant focuses attention upon the phrase “ the best ; workmanship manner ” as indicated by his sixth proposed find- j ing of fact and endows it with his concept of personal satisfac- ! tian, divorced from the fact that the phrase is modified by the ' common denominator, “ union skillful craftsmen.” The words “ best workmanship manner ” do not stand in splendid isolation but are associated with the words that follow. In the context of this agreement “ best workmanship manner ” does not describe ' the performance of some Picasso of the painting industry, but, As modified, refers to the more plebian group of men who practice a craft.
I am satisfied from this record that although their work may not have satisfied the defendant, the men engaged by the plaintiff were union men; that they, together with the plaintiff, were craftsmen; that in the frame of reference of their craft they were skillful; and that they did their work in the best workmanship manner of skillful union craftsmen.
In view of the provision that the measure of performance shall be “ the best workmanship manner by union skillful craftsmen ” it is my finding that the plaintiff performed in accordance with the standard accepted by the defendant.
In reaching this conclusion I have not overlooked the pictures submitted in evidence by the defendant. But, apart from the applicable standard of performance, it must be recalled that the craftsmen engaged by the plaintiff were not working in a new apartment and, in addition, that the work concededly was not *45 finished and, therefore, that the pictures reflect a job that in part, at least, was not complete.
Nor have I overlooked the provision in the agreement of February 9, 1968, that A1 Klaus would be employed as the paperhanger. The plaintiff testified without contradiction that he tried to get A1 Klaus but was unsuccessful because he was otherwise engaged.
The conflict presented by this case was created, in my opinión, before the services of the plaintiff began, when the defendant elected not to select a painter recommended by his decorator but chose instead the plaintiff whose bid was less than that of John Weidl, the painter who was recommended by the decorator and who ultimately succeeded the plaintiff.
The parties in this case contracted in good faith but their dispute was probably inevitable because the defendant, a perfectionist, had a different concept of performance in mind than the one to which he subscribed. While the plaintiff was performing in accordance with the contractual standard he had submitted, the defendant demanded performance in accordance with a standard that he had in mind but which was not reflected in the agreement. As Corbin says, “ The cases demonstrate plainly enough that a person may be held bound in accordance with his expressions as understood by the other party, even though his own intention and meaning were different.” (1 Corbin, Contracts, § 106, p. 475.)
3. Since, in my view, the plaintiff’s discharge under the terms of the agreement was improper, the next question to be considered is the measure of the plaintiff’s damage.
The applicable rule, simply stated, is the contract price less payments made on account and less the cost of completion. (See New Era Homes Corp. v. Forster, 299 N. Y. 303, 307.) (See, also, 13 N. Y. Jur., Damages, § 57; 22 Am. Jur., Damages, §§ 48, 174; 22 ALB 2d 1338; 5 Corbin, Contracts, § 1094, p. 508 et seq.)
Corbin sums up the applicable rule in the analogous case of a building contractor by saying that “ Careful consideration of the two rules will show that the building contractor’s expenditures in part performance, plus the profit that he would have made in case of full performance of the contract by both parties, is exactly the same amount as is reached by deducting the cost of completing the partly performed contract from the entire contract price.” (5 Corbin, Contracts, § 1094, p. 512.)
This case presents some difficulty in ascertaining the amount of damage in view of the sharp difference in the estimates of the plaintiff and the defendant as to the amount of work finished *46 and the amount unfinished. The plaintiff claims that he completed 85% of the work, leaving 15% unfinished, while the defendant claims that he finished 25% to 30% of the work. Indicative of the difficulty of deciding this issue is the statement in the memorandum of plaintiff’s counsel that “It is a fact that some work had not been completed and that there should be some allowance to the defendant. It is respectfully suggested that as the writer has great difficulty in evaluating what the allowance should be, the Court, if it decides in favor of the plaintiff, will also have difficulty in arriving at what that allowance should be.”
After careful consideration of the record I find that the plaintiff completed 65% of the work, leaving 35% unfinished.
Among the considerations that led to this finding are the following:
John Weidl, the painter who succeeded the plaintiff, testified that 55% of a painting and papering job is the preparatory work, leaving 45% as the amount for finishing. I find on the basis of my study of the record that the plaintiff had completed substantially all of the preparatory work, leaving undone about 5% of that phase of the job. Of the remaining 45% of the entire job, constituting the finishing of the work, I find, after comparing the testimony of the plaintiff and the testimony of John Weidl that the plaintiff completed 15% of the finishing work and that 30% of it was left unfinished at the time his engagement was terminated.
In the statement dated April 23, 1968, submitted by the plaintiff to the defendant immediately after his discharge, the plaintiff gave “ an allowance for unfinished painting and papering ” of $1,116.95. Annexed to that statement is an itemization of the unfinished work showing $781.95 as the amount of labor for unfinished paperhanging and $335 as the unfinished amount of labor and materials for painting. The amount of paint included in this itemization is not specified, but I think it is fair to find that substantially most of this item is labor.
In response to the defendant’s demand, dated March 21, 1969 (plaintiff’s Exhibit No. 3), Exhibit C of that statement, also dated March 24,1969, sets forth, in part, an analysis of the items of labor, insurance, material, profit and overhead that comprised the total contract price of $6,947 exclusive of $655 in extras.
The amount stated as the total cost of labor in the fixing of the price of $6,947 is the sum of $2,926.22.
It will be noted that the allowance of $1,116.95 for 11 unfinished painting and papering ” in the statement dated April 23, 1968 *47 is about 38% of the total cost of labor as stated in plaintiff’s Exhibit No. 3, dated March 24, 1969. Since an unsubstantial part of the $335 allocated to the value of the unfinished painting represents paint, this ratio of unfinished labor to the total cost of labor is another factor tending to confirm my finding on the basis of the total record that 35% of the work was unfinished when the plaintiff’s engagement terminated on April 22, 1968.
Accordingly since the total contract price including extras was the sum of $7,602, plaintiff is entitled to recover, subject to the defendant’s counterclaim, that amount less $2,500 paid on account and less the further sum of $2,660.70, representing the cost of completing the unfinished part of the job, or a total of $2,441.30.
4. This leads to the consideration of that part of the defendant’s counterclaim based on the claim that he paid $11,147.85 to another painter to correct and complete the work for which plaintiff had been engaged.
For the reasons already stated, the defendant is not entitled to a recovery for the amount paid to another contractor to do over the work performed by the plaintiff.
Additionally it is not possible on the basis of this record, to separate the cost of doing over the plaintiff’s work from the cost of completion of the work by the successor painter.
Finally it is my view that the price paid to John Weidl for correction and completion of the work is not a proper measure of the cost of completion, assuming that it could be separated from the cost of doing over the plaintiff’s work, inasmuch as the record establishes that John Weidl has a different and higher standard for his charges than the plaintiff, who was selected initially, in part at least, because his bid was lower than that of the successor painter. The proper measure in my view is the cost of completion on the basis of the bid made by the plaintiff and accepted by the defendant.
5. The balance of the defendant’s counterclaim is based on the contention that the plaintiff exaggerated the amount of the mechanic’s lien and therefore that he is liable to the defendant for damages pursuant to section 39-a of the Lien Law.
The statute provides in part that the measure of damage is ‘1 an amount equal to the difference by which the amount claimed to be due or to become as stated in the notice of lien exceeded the amount actually due or to become due thereon.” However the statute, which is penal in nature, has been construed by the Court of Appeals to be applicable only to the extent that the *48 exaggeration is willful (Goodman v. Del-Sa-Co Foods, 15 N Y 2d 191).
The plaintiff claims that a finding of willful exaggeration cannot be made in this case because, in substance, of a conflict in the evidence as to the amount of work finished, the amount of work unfinished and the amount due him.
However on April 23, 1968, prior to the filing of the lien, the plaintiff billed the defendant for an unpaid balance of $3,985.05, giving an allowance for unfinished paperhanging and painting of $1,116.95. Nevertheless almost two months later, on June 10, 1968, the plaintiff filed a lien for $5,482.10. The exaggeration, therefore, was deliberate. (See Soundwall Constr. Corp. v. Moncarol Constr. Corp., 56 Misc 2d 892.)
Since the sum of $5,482.10 for which the lien was filed includes an item of sales tax amounting to $380.10, the defendant is entitled to recover damages equal to the difference between $5,102 and $3,985.05 or $1,116.95.
While I have found that the unfinished portion of the work exceeds $1,116.95, namely $2,660.70, that amount is not the damage, for the reason that damage under the statute is predicated on willfulness and being penal in nature must be strictly construed. (Goodman v. Del-Sa-Co Foods, 15 N Y 2d 191, supra.) The sum of $2,660.70 in the circumstances presented here represents a finding that is difficult to ascertain, rather than a matter of certainty, and calls for judgment about which there may reasonably be differences of opinion.
6. The defendant also claims additional damage equal to the premium on the bond and attorney’s fees for services relative to setting aside the lien pursuant to section 39-a.
Curiously enough, none of the cases that have come to my attention involving the assessment of damages based upon premiums and attorney’s fees incurred in the process of setting aside the lien discuss the basis upon which the amount of the assessment should be determined. (See Wilson & Adams Co. v. Learner Realty Co., 143 Misc. 334 [1932]; Durand Realty Co. v. Stolman, 197 Misc. 208 [1949]; Consolidated Blasting Corp. v. Colabella Bros., 10 Misc 2d 913 [1957]; Goodman v. Del-Sa-Co Foods, 15 N Y 2d 191 [1965].)
There is no logical basis, in my opinion, for differentiating the provisions of section 39-a relative to bond premiums and attorney’s fees from the balance of the same proviso relative to the additional assessment of damage in “ an amount equal to the difference by which the amount claimed to be due or to become *49 due as stated in the notice of lien exceeded the amount actually due or to become due thereon.”
Since in my view the determinative consideration is whether there has been willful exaggeration, I conclude that only those portions of the premium on the bond and attorney’s fees directly attributable to the expenses incurred by reason of willful exaggeration may be imposed as additional items of damages.
In the present case the testimony establishes that the annual premium on the bond was $115. Approximately three years and nine months have elapsed since the lien was bonded on March 17, 1969. The total premium for three and three-quarter years is therefore approximately $431. Inasmuch as I have found that the lien was willfully exaggerated to the extent of $1,116.95, or approximately 20% of the total amount of the lien of $5,482.10 less the sales tax of $380.10 or $5,102, I find that the damage insofar as the premium on the bond is concerned is 20% of $431 or $86.20.
This leaves for consideration the amount of damage allocable to the attorney’s fee incurred in connection with the discharge of the lien, to the extent that it was willfully exaggerated. Counsel for the defendant claims that $2,500 is the reasonable value of his services. In view of the time spent and the difficulties of the case, this amount is not unreasonable but in relation to the amount of the lien involved, the fee, in my opinion, should not exceed 40% of the total of $5,102 or $2,040.80. Since, as noted, the amount by which the lien was willfully exaggerated is 20% of the total amount of the lien, the portion of the fee allocable to the amount of willful exaggeration is $408.16.
7. The remaining question for consideration is whether the plaintiff is entitled to judgment for the value of the work performed for which he has not been paid, in view of the proviso of section 39 of the Lien Law that the lien is void if the amount is willfully exaggerated.
Sections 39, 39-a and 54 of the Lien Law must be construed together. Section 54 provides that " If the lienor shall fail, for any reason, to establish a valid lien in an action under the provisions of this article, he may recover judgment therein for such sums as are due him, or which he might recover in an action on a contract, against any party to the action.”
As the court said in Hutchinson Roofing & Sheet Metal Co. v. Gilbert Constr. Corp. (275 App. Div. 1048) "Plaintiff should not have been denied the amount found to be due it on the contract, even though defendant was entitled to recover damages on account of the exaggerated lien. (Lien Law, §§ 39, 39-a, 54.) ”
*50 Accordingly, the judgment to be entered shall be computed as follows:
A. The amount due from the defendant is the sum of $2,441.30 plus the applicable sales tax, to wit the following:
Pursuant to the New York State sales and use tax law, the sales tax until April 1,1969 was at the rate of 5%. Prom April 1, 1969 to June 1, 1971, the rate was 6% and thereafter the rate was 7%. Based on those rates the sales tax on the deposit of $2,500 paid by the defendant to the plaintiff in 1968 is $125 and the sales tax on the sum of $2,441.30 is $170.89.
Accordingly, the amount due from the defendant to the piarátiff is the sum of $2,441.30 plus $125 plus $170.89 or a total of $2,737.19, plus interest on $2,441.30 from April 23,1968.
B. The amount due from the plaintiff is the sum of $1,116.95 plus $86.20 plus $408.16 or a total of $1,611.31.
Therefore judgment may be entered in favor of the plaintiff and against the defendant for the sum of $1,125.88 together with interest on the sum of $2,441.30 from April 23,1968. In the circumstances of this case, neither party is granted costs or disbursements.
Execution shall be stayed for 30 days.
The lien having been found invalid, the bond herein may be discharged.