**TODD SHIPYARDS CORPORATION, Plaintiff,**

**v.**

**CUNARD LINE LIMITED and M.V. SAGAFJORD, her engines, boilers, etc., Defendants.**

**CUNARD LINE, LTD., a body corporate, Plaintiff,**

**v.**

**TODD SHIPYARDS, INC., a body corporate, et al., Defendants.**

**Nos. C-84-3674-SW, C-85-3066-SW.**

United States District Court, N.D. California, San Jose Division.

Sept. 1, 1989.

[redacted]

[redacted]

Rogers, Joseph, O'Donnell & Quinn, Allan J. Joseph, Mark A. White, Nance F. Becker, San Francisco, Cal., for Todd Shipyards Corp.

Cadwalader, Wickersham & Taft, Grant B. Hering, Kathleen M. McLeod, Penny E. Fisher, New York City, Lillick & Charles, Ann G. Miller, San Francisco, Cal., for Cunard Line Ltd.

## ORDER GRANTING MOTION TO CONFIRM THE ARBITRATION AWARD AND DENYING MOTION TO VACATE THE ARBITRATION AWARD

SPENCER WILLIAMS, District Judge.

On December 2, 1988, an arbitral panel awarded Todd $11.5 million. Cunard disputes all parts of the award except for Part A and moves to vacate the award pursuant to 9 U.S.C. § 10(d). Todd moves to confirm the entire award.

Upon oral argument, this court confirmed all parts of the award but took the matter of attorneys' fees, Part C, under submission. Having considered the papers filed herein and the oral argument of counsel, this court makes the following rulings.

### BACKGROUND

#### I. FACTS

On September 22, 1983, Todd contracted with Cunard to refurbish the passenger cruise ship M.V. SAGAFJORD for a total fixed cost of approximately $4.5 million. Todd was to complete the work by December 20, 1983. Some of the work encompassed by the contract included the repair and upgrade of cabins and common areas and the addition of new cabins and a nightclub.

During the course of the contract negotiations, the parties agreed to reduce the portion of the bid price relating to engineering work. Cunard suggested and Todd agreed that the German engineering firm, Hapag–Lloyd, would perform the engineering work under separate contract with Cunard. Much of the disagreement between the parties revolves around engineering and design questions.

Due to Cunard's alleged failure to ensure proper engineering specifications and mate-

rial as required implicitly or explicitly by the contract, Todd avers that it was only able to substantially complete the project. Todd claims that as a result of Cunard's breach of these contractual obligations, Todd incurred expenses far beyond those originally calculated in the fixed contract price. According to Cunard, it did not pay Todd the full contract price because Todd allegedly failed to complete the work as required by the contract.

## II.  PROCEDURE

After unsuccessful settlement negotiations, Todd brought suit against Cunard and an *in rem* action against the ship in this court on June 18, 1984. Todd sought damages totalling approximately $9 million on the grounds of breach of contract, quantum meruit and fraud. In accordance with the provisions of the contract, the parties stipulated to stay proceedings in this court pending arbitration before the American Arbitration Association.

Substantive arbitration hearings began in Newark, New Jersey in March of 1985. Cunard counterclaimed for the cost of the uncompleted work and for damages from delay of completion. At the initial hearing, Cunard challenged the arbitration panel's authority to consider extrinsic evidence relating to understandings beyond the four corners of the contract.

In April of 1985, Cunard filed suit in New Jersey federal district court seeking court intervention preventing the arbitration panel from hearing such extrinsic evidence. That case was transferred to this court. Cunard contended that the standard "integration clause" contained in § 19 of the contract precluded any consideration of agreements beyond the written terms of the contract.

On June 4, 1985, this court denied Cunard's motion to prohibit the panel from considering extrinsic evidence by relying on the broad language of the contract's arbitration clause. The arbitration clause of the contract required arbitration of "[a]ny and every dispute, difference or question" between the parties "relating to this Agree-

ment ..." In the June 4, 1985 order, this court ruled that:

> This clause is on its face broad enough to render the question of the composition of the contract between the parties arbitrable. The question for the arbitrators will apparently be whether documents of other matters outside the September 22, 1983 agreement are part of the contract between the parties. This inquiry, as even Cunard appears to concede, will entail an interpretation of Section 19 of the agreement. Such a question is on its face a "dispute ... between the parties ... relating to this Agreement," and is thus arbitrable.

This court ultimately sanctioned Cunard for making certain arguments in support of this motion. On August 1, 1986, the panel issued an interim ruling to the effect that the eleven page contract did not embody the entire agreement between the parties.

The arbitrators agreed unanimously that they would not render detailed findings. It was also agreed that each arbitrator could issue an individual commentary which would have no authoritative or evidentiary significance in any post-award proceedings. Thus, there are no official findings for this court to review.

## DISCUSSION

### I.  FEDERAL ARBITRATION ACT

#### A.  *Introduction*

■ Enforcement of arbitration awards subject to the Federal Arbitration Act is governed by the provisions of 9 U.S.C. § 1 *et seq.* The primary purpose behind this Act was to ensure that "private arbitration agreements are enforced according to their terms ..." *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Ordinarily, state law will not be pre-empted by federal law unless state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id., citing Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

### B. *Legal Standard*

Arbitration awards may only be vacated where the arbitrators acted in manifest disregard of the law. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960). This stringent standard was necessary in order to ensure that disputes were disposed of quickly and to save the expense and delay of protracted court proceedings. *Saxis Steamship Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967). A party moving for vacatur bears the burden of showing that the arbitrator chose to ignore what he or she knew to be the law or did not have a rational basis in determining the award. *San Martine Compania de Navegacion, S.A. v. Saquenay Terminals Limited*, 293 F.2d 796, 801 (9th Cir. 1961).

Thus, the reviewing court may not re-weigh or re-examine the evidence. *Local Union 1160 v. Busy Beaver Building Centers, Inc.*, 616 F.Supp. 812, 814 (W.D. Pa.1985). In fact, the U.S. Supreme Court has held that because the parties bargained for an arbitrator's construction of the contract, "the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers*, 363 U.S. at 599, 80 S.Ct. at 1362. One court has gone so far as to state that an arbitration award will not be vacated even where the arbitrators' opinion was "clearly erroneous both in logic and result." *Cobec Brazilian Trading & Warehousing Corp. v. Isbrandtsen*, 524 F.Supp. 7, 9 (S.D.N.Y.1980).

## II. APPLICATION OF THE STANDARD

### A. *Breach of Contract*

#### 1. Arbitration Clause

Cunard's primary attack on the arbitration award focuses on Part B, where the arbitrators awarded Todd $6 million for breach of contract damages. Cunard contends that the arbitrators converted a fixed-price contract into a cost plus contract by awarding Todd damages beyond the fixed cost of the contract. Because the arbitrators may only base an award on matters submitted to them, the arbitrators exceeded their powers in contravention of 9 U.S.C. § 10(d) by not awarding damages on a fixed-cost basis as the parties originally had agreed.

However, this court previously ruled that the arbitrators could find in the language of the arbitration clause the power to resolve every dispute, including the interpretation of the integration clause. Federal courts have consistently held that such sweeping arbitration clauses give arbitrators the authority to determine the full extent of the parties' agreement. *See e.g. Seaboard Coast Line Railroad Co. v. National Rail Passenger Corp.*, 554 F.2d 657, 660–61 (5th Cir.1977); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967). Accordingly, the arbitrators could have found that the written contract did not constitute the complete agreement between the parties.

Such a finding does not stand in manifest disregard of New York law. Under New York law, standard integration clauses must be disregarded where extrinsic evidence is needed to fully ascertain the scope of the parties' agreement. *Baldt & Corp. v. Tabet Manufacturing Co.*, 412 F.Supp. 249, 254 (S.D.N.Y.1974), *aff'd*, 517 F.2d 1395 (2d Cir.1975). This court therefore finds that the arbitrators did not exceed their authority where they concluded that the written contract did not fully embody the complete agreement between the parties.

#### 2. Parol Evidence Rule

Cunard also argues that the arbitrators' consideration of parol evidence stands in manifest disregard of New York law. The general rule is that parol evidence is not admissible to show the substance of the parties' agreement where the terms of the contract are completely contained within the written contract. *Asheville Mica Co. v. Commodity Credit Corp.*, 335 F.2d 768, 770 (2d Cir.1964). Because the parol evidence rule applies only where the written contract itself is complete, the

arbitrators very well could have considered such evidence because they did not find the written contract complete as per the Interim Ruling. *See Estey Corp. v. Vincent J. Smith, Inc.*, 47 A.D.2d 585, 363 N.Y.S.2d 166, 167 (1975).

### 3. Written Change Clause

■ Another provision of the contract which Cunard claims the panel discarded in violation of its authority was the provision that all changes must be approved by Cunard in writing. However, the panel could have rationally found that the change order process broke down due to the sheer weight of the extra work engendered by Cunard's conduct. New York law will not enforce such provisions where a party causes additional work. *Keahon Bros. v. Palisades Interstate Park Commission*, 21 A.D.2d 833, 252 N.Y.S.2d 300 (1964).

### B. *Arbitration Costs*

In part D of the award, the panel awarded Todd sums for arbitration costs. Cunard essentially disputes this part of the award on the grounds that the entire award was beyond the power of the arbitrators and in manifest disregard of the law. Because this court finds that the arbitrators did not exceed their authority and did not manifestly disregard the law, this court rejects Cunard's contentions in this regard.

### C. *Denial of Counterclaims*

■ The arbitral panel could have found under New York law that Cunard was not entitled to liquidated damages for delay of completion because the panel could have found that Cunard was the cause of this delay. *See Staten Island Supply Co., Inc. v. Beverly–Glenwood Richmond Corp.*, 96 A.D.2d 553, 465 N.Y.S.2d 232, 234 (1983). Similarly, the panel could have denied Cunard's claims for completion costs because the panel could have found that Cunard had no right to such costs where Cunard did not present this claim in arbitration or where Cunard was the cause of Todd's inability to perform. *Grimpel v. Hochman*, 74 Misc.2d 39, 343 N.Y.S.2d 507,

513–14 (1972). This court finds that the arbitrators did not manifestly disregard the law in denying the counterclaims because Todd did produce evidence on which the panel could have based its conclusion.

### D. *Punitive Damages*

■ Cunard opposes the award of punitives on the grounds that New York law prohibits such an award in arbitration matters. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). However, federal courts have not followed *Garrity* when applying the Federal Arbitration Act. Punitive damages have been found to be arbitrable in federal court. *Willis v. Shearson/American Express, Inc.*, 569 F.Supp. 821 (M.D.N.C.1983).

Next, Cunard points out that only one circuit court has explicitly found punitives arbitrable where there was no express agreement between the parties. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988). This is correct. However, Cunard cannot point to any case authority within the Ninth or Second Circuits which explicitly forbade the arbitration of punitives absent an express agreement.

In the alternative, Cunard contends that the application of the *Garrity* rule in this circuit would not vitiate the federal policy that arbitration agreements should be enforced. Regardless of the merits of this claim, Cunard has presented no persuasive argument that the panel manifestly disregarded the law in not applying *Garrity*.

■ Finally, Cunard claims that Todd did not meet the New York state law requirement of fraud in order to sustain punitives. *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). As usual, Cunard would have this court review the merits of the arbitration panel. This court finds that there was evidence on which the panel could have based its finding of morally reprehensible conduct.

### E. *Attorneys' Fees*

In Part C of the award, the panel awarded Todd attorneys' fees. Todd contends that the award of fees in this case was premised on a tribunal's inherent authority to award fees where a party acted in bad faith during litigation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 257–59, 95 S.Ct. 1612, 1616–17, 1621–22, 44 L.Ed.2d 141 (1975). In opposition, Cunard notes that federal courts have not permitted the award of fees absent an explicit agreement by the parties in the arbitration clause. *Sammi Line Co. v. Altamar Navegacion, S.A.*, 605 F.Supp. 72, 73–4 (S.D.N.Y.1985); *see also* N.Y.Civ. Prac.L. & R. § 7513 (McKinney 1980); Domke, *Commercial Arbitration* § 43:01 (1988).

Todd distinguishes cases such as *Sammi* because those cases involved the award of attorneys' fees to the prevailing party. Here, by contrast, Todd avers that the arbitrators could have awarded attorneys' fees as sanctions for Cunard's bad faith conduct throughout the arbitration. Cunard maintains that the cases cited by Todd involved the inherent power of courts to award such fees on the basis of bad faith conduct.

However, Cunard can point to no authority which affirmatively negates Todd's distinction. Furthermore, one court has held that under the Federal Arbitration Act, the arbitrators would not violate their power to award such fees absent agreement by the parties where one party refused to arbitrate indemnity claims. In *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co., Inc.*, 354 F.2d 42 (2d Cir.1965), the Second Circuit ruled that the possibility of an award for attorneys' fees despite the absence of agreement by the parties on this issue could be considered in determining whether the jurisdictional amount had been met.

Although discussed only briefly by the parties, it is possible that New York law supplies the governing law in this instance. Even if New York law prohibits the award of such fees for bad faith conduct as Cunard contends, the arbitrators could have found that federal law pre-empts state law to that effect. As noted *supra* at 1465 state law could be pre-empted by the Federal Arbitration Act where state law frustrates the accomplishment of the full purposes of the Act.

One purpose of the Act was to encourage the "expeditious resolution of disputes . . ." *Volt Information*, 109 S.Ct. at 1255. The panel could have found that the award of attorneys' fees would discourage litigation strategies which frustrate the speedy resolution of disputes. Because the arbitrators did have some basis for determining that they had the power to award attorneys' fees for bad faith conduct, this court cannot conclude that the arbitrators *manifestly* disregarded the law in this respect or that they reached an irrational result.

Finally, Cunard argues that even if the arbitrators had the power to award attorneys' fees, federal law would not have permitted such an award on the facts of this case. In support of this contention, Cunard cites *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) for the proposition that attorneys' fees may only be awarded upon showing of " 'clear evidence' that the claims are 'entirely without color *and* made for reasons of harassment or delay or for other improper purposes.' " (emphasis in original) (citations omitted). Again, the legal standard which this court must apply under the Act does not allow this court to reach the substance of the arbitrators' determinations.

There exists ample basis for the arbitrators to have concluded that Cunard's claims were not colorable but were made for purposes of delay. The arbitrators could have pointed to a number of instances: Cunard's motion before this court which resulted in sanctions against Cunard; Cunard's refusal to attend the arbitration hearings in San Francisco; the filing of the 1985 action in New Jersey federal court; and Cunard's objection to the lifting of the stay of bankruptcy. In view of this evidence, this court cannot fairly say that the panel manifestly disregarded the requirement that the claims must have been "without color or for purposes of delay."

Accordingly, the motion to vacate the arbitral award is hereby DENIED and the motion to confirm the arbitral award is hereby GRANTED.

IT IS SO ORDERED.