**TODD SHIPYARDS CORPORATION,**
Plaintiff–Appellee,

v.

**CUNARD LINE, LTD., and M.V. SA-GAFJORD, her engines, boilers, etc., Defendant–Appellant.**

**CUNARD LINE, LTD., and M.V. SA-GAFJORD, her engines, boilers, etc., Plaintiff–Appellant,**

v.

**TODD SHIPYARDS CORPORATION,**
Defendant–Appellee.

Nos. 89–16607, 89–16610.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1990.

Decided Aug. 27, 1991.

Grant B. Hering, Cadwalader, Wickersham & Taft, New York City, for Cunard Line, Ltd.

Allan J. Joseph (argued), and Mark A. White, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for Todd Shipyards Corp.

Before HUG, BEEZER and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Cunard Line Limited ("Cunard") appeals from a district court order confirming an arbitration award in the matter of *Todd Shipyards Corporation and Cunard Line Limited,* American Arbitration Association ("AAA"), Case No. 13–110–0658–84, and confirming the denial of Cunard's counterclaim. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### I. FACTS

In September 1983, Todd Shipyards Corporation ("Todd") and Cunard entered into a contract for the repair and refit of a passenger cruise ship, the M.V. Sagafjord. The work was undertaken at Todd's San Francisco shipyard for a fixed price of $4.5 million. The project was extensive and included repairs to the body and interior of the ship, the upgrade and conversion of existing cabins and common areas, and the addition of a two-level module structure housing twenty cabins and a nightclub. The contract contemplated the work would be completed by December 20, 1983.

Section 1 of the contract between Todd and Cunard states: "Drawings and Specifications pertinent to this Contract are attached hereto as Exhibits A and B respectively, and made a part hereof." Neither drawings nor specifications were attached, in fact, and as a result the contract was incomplete in various respects. The parties disagree about the nature and extent of issues left open by the contract, and about terms and understandings outside the written agreement.

The arbitration panel declined to make specific findings of fact. Because this court must accept the facts as decided by the arbitration panel, *see infra,* III. *Standard of Review,* the description that follows relies on findings implicit in the arbitration award.

#### a. Plans and Specifications

The contract contemplated these would be part of the agreement. No plans or specifications were attached to the contract, however, and the arbitration panel decided, despite Cunard's assertion that the parties had agreed to utilize drawings and descriptions contained in two loose-leaf binders, that no such agreement was made. As such, the panel held that in order to determine the intent of the parties with regard to the project, "evidence extrinsic to [the contract] must be used to determine" the nature of the agreement.

#### b. Construction Engineering and Working Drawings

Todd's bid for the contract included the cost of retaining engineers to inspect the ship and prepare detailed working drawings for the project. In the course of negotiations Cunard informed Todd it would engage an outside firm, Hapag–Lloyd ("Hapag"), to perform this work and provide these materials to Todd. The contract price was reduced by $235,000 to reflect this deletion from the agreement. Todd asserted, and the panel apparently agreed, Cunard's failure to provide adequate drawings caused Todd enormous overtime expense.

#### c. Supply of Construction Materials, Fixtures and Furnishings

The contract reflected Cunard's desire to provide a variety of construction materials,

fixtures and furnishings, rather than leave the purchase of these materials to Todd. The panel found Cunard breached this part of the agreement by failing to provide various materials and sufficient installation instructions, and by failing to sufficiently pre-customize certain of the fixtures.

### d. Open Items

A number of design decisions left open by the agreement were essential to the completion of the project. The panel found that delay with regard to these decisions by Cunard, and Cunard's "design as you go" approach to the project as a whole led to a large increase in the cost of the project to Todd.

Because of Cunard's failure to provide specifications, drawings, materials and design support during the project, Todd was not able to complete the repair and conversion of the Sagafjord in the fifty days allotted. More significantly, Todd incurred a large additional expense due to overtime worked in an effort to complete the project despite Cunard's intransigence. Cunard refused to pay even the fixed contract price ($4.5 million) because Todd failed to complete the entire project within the contract period.

### II. PROCEEDINGS BELOW

Todd filed suit against Cunard, and *in rem* against the Sagafjord, alleging breach of contract, quantum merit, breach of duty of good faith and fair dealing, and fraud. Todd filed a demand for arbitration pursuant to a comprehensive arbitration clause in the contract. The arbitration commenced in March 1985.[1]

The arbitration was dominated at once by the question whether the written agreement dated September 22, 1983, was the entire contract between the parties. Cunard filed a motion in the District Court of New Jersey seeking determination under 9 U.S.C. § 4 whether it was within the authority of the arbitration panel to decide the scope of the written agreement. The

action was transferred to the Northern District of California where Judge Williams held that the arbitration clause contained in the contract contemplated arbitration of "any and every dispute," which included the question whether the written contract was a complete representation of the parties' agreement.

In August 1986 the arbitration panel issued an interim ruling on "Contract Composition." The panel determined: (a) the contract referred to exhibits which purportedly described the nature of the "repairs" contemplated by the agreement; (b) such exhibits were not attached to the contract; (c) the contract did not contain the complete understanding of the parties; (d) extrinsic evidence was necessary to arrive at something approaching the parties' understanding; and (e) various amendments and additions to the agreement occurred after the parties signed the written contract. As a result of these findings the panel invalidated the contract's integration section (§ 19) which, as Cunard avers, "emasculated the parties' fixed price contract."

After an extensive arbitration over more than two years the panel issued an award in favor of Todd for $11.4 million, including compensatory damages, punitive damages, attorneys' fees, and costs. The panel also denied Cunard's counterclaim for Todd's alleged failure to perform the contract within the period allotted.

Cunard filed a motion in the District Court of New Jersey to vacate the award, while Todd asked the District Court for the Northern District of California to confirm the award. The entire matter was considered by the latter court which confirmed the award in its entirety. *See Todd Shipyards Corp. v. Cunard Lines Ltd.*, 735 F.Supp. 1463 (N.D.Cal.1989).

### III. STANDARD OF REVIEW

■ The Federal Arbitration Act, 9 U.S.C. at § 10, sets out the grounds upon which a federal court may vacate the decision of an arbitration panel. The statute addresses decisions influenced by corrup-

---

**1.** Each party chose one member of the three-member panel and the AAA appointed the    Chairman of the panel.

tion or undue influence, and cases in which arbitrators exceed their power under the terms of an agreement to arbitrate. Courts have interpreted this section narrowly, in light of Supreme Court authority strictly limiting federal court review of arbitration decisions. It is generally held that an arbitration award will not be set aside unless it evidences a "manifest disregard for law." *See "Steelworkers Trilogy": United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

We said in *San Martine Compania De Navegacion v. Saguenay Terminals Ltd.,* 293 F.2d 796, 800 (9th Cir.1961):

> [A]n award such as this, which is one within the terms of the submission, will not be set aside by a court for error in law or fact.... "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts.... If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court ... will not set it aside for error, either in law or fact." (quoting *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854))

More recently we have reemphasized the stringent standard set out in these early cases. In *French v. Merrill Lynch,* 784 F.2d 902, 906 (9th Cir.1986), we stated: "We review the Panel's award mindful that confirmation is required even in the face of 'erroneous ... misinterpretations of law.' ... It is not even enough that the Panel may have failed to understand or apply the law.... An arbitrator's decision must be upheld unless it is 'completely irrational,' or it constitutes a 'manifest disregard of law.'" (citations and notes omitted); *accord Coast Trading Co., Inc. v. Pacific Molasses Co.,* 681 F.2d 1195 (9th Cir.1982).

## IV. COMPENSATORY DAMAGES

The arbitration panel awarded Todd more than $6 million for work it performed beyond that contemplated by the contract. Cunard argues the arbitration panel exceeded its power and acted in manifest disregard of law by ignoring, indeed by excising portions of the contract which, in its view, limit Todd's right to recover damages above the fixed contract price ($4.5 million). In an interim order, the district court held that the contract's arbitration provision was sufficiently broad to encompass a decision regarding the scope and composition of the parties' agreement. In its final opinion, the court reaffirmed this view, holding that once the panel decided the contract did not represent the complete agreement of the parties, it was entitled to hear evidence extrinsic to the agreement, and to base its award on that evidence. 735 F.Supp. at 1466-67.

### a. Integration Clause

After Todd introduced evidence of agreements made between the parties after signing the contract, Cunard filed a motion in federal court, under 9 U.S.C. § 4, requesting the court to prohibit the arbitration panel from deciding that the written contract did not represent the complete and final agreement of the parties, and thus from considering extrinsic evidence.

Section 21 of the contract states "Any and every dispute, difference or question between the parties hereto which shall at any time arise after the execution of this Agreement ... relating to this Agreement, shall be referred to arbitration." The district court held federal law permits arbitrators to consider the composition and scope of a contract that contains this kind of expansive arbitration provision.

■ Federal courts have taken a broad view of the power of arbitrators to decide disputes arising during the operation of a commercial contract, and concerning the composition, meaning, and scope of that agreement. This is particularly true when a contract, like the one here, contains an expansive arbitration clause. *See Moses*

*Cone Memorial Hospital v. Mercury Constr. Corp.* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Manufac. Co.*, 388 U.S. 395, 404–405, 87 S.Ct. 1801, 1806–07, 18 L.Ed.2d 1270 (1967); *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir.1983); *Seaboard Coast Line Railroad Co. v. National Rail Passenger Corp.*, 554 F.2d 657, 659–60 (5th Cir.1977).

■ In its "Interim Order relating to Contract Composition" the panel held that because the written agreement was drastically incomplete, it was necessary to disregard the integration clause of the contract (§ 19), and to consider evidence extrinsic to the contract. In light of the narrow review this court is permitted to undertake, we hold that there was sufficient evidence for the arbitration panel to take this view.

The panel found that Exhibits "A" and "B" referred to in § 1 of the contract were not clearly marked and as a result of the incomplete arrangement the parties agreed to a series of "amendments" after the signing of the contract. The panel was authorized by New York law [2] to decide that "standard integration clauses must be disregarded where extrinsic evidence is needed to fully ascertain the scope of the parties' agreement." *Todd*, 735 F.Supp. at 1466 (citing *Baldt & Corp. v. Tabet Manufac. Co.*, 412 F.Supp. 249, 254 (S.D.N.Y.1974), *aff'd*, 517 F.2d 1395 (2d Cir. 1975). In light of the evidence and authority, the decision of the panel to invalidate the integration clause and to consider extrinsic evidence did not exceed the power of the panel to render decisions regarding the scope and composition of the agreement.

#### b. Change Order Provision

■ Cunard asserts the panel exceeded its authority by ignoring an express contract provision requiring change orders to be written and to contain fixed cost provisions. Indeed, the award is based on a large amount of work by Todd not countenanced by any written or fixed cost agreement. The district court held, however, under New York law, written change order provisions may be disregarded when additional work is the result of a party's intransigence or incompetence. *See Arrow Plumbing Co. v. Dare Construc. Corp.*, 212 N.Y.S.2d 438, 441 (1961).

■ There is significant evidence the additional hours expended by Todd were the result of a failure to plan and cooperate on Cunard's part. In view of the narrow standard with which this court reviews either the factual or legal basis of the panel's award, the decision of the arbitrators to ignore the change order provision and to base the award on hours actually expended by Todd, is not cause for reversal here.[3]

### V. PUNITIVE DAMAGES

The arbitration panel awarded $1 million to Todd "as a consequence of Cunard's bad faith, deceptive practices, knowingly making incorrect representations to Todd during contract performance and improper withholding of monies due." Cunard asserts the district court erred in confirming this part of the award because it was beyond the power of the arbitrators to make a punitive damage award.

#### a. Applicable Law

■ Under New York law commercial arbitrators do not have the authority to award punitive damages. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). Cunard asserts a New York choice of law provision in the contract should have led the arbitration panel to apply New York law. Cunard

---

**2.** The contract provides (§ 21) that it is to be construed in accordance with New York law.

**3.** Cunard presents at least two other arguments that do not merit extended discussion. Appellant contends Todd did not prove that Cunard breached the contract or satisfy its burden of demonstrating damages. There is no argument that the panel acted beyond its power or acted in manifest disregard of law. Cunard would simply have this panel revisit the evidence and overturn the award. The narrow standard applied to arbitration awards prevents this kind of review.

would have this court apply New York rules and overturn the punitive damage award.

Cunard relies on a recent Supreme Court decision, *Volt Information Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In that case, the parties entered into arbitration pursuant to a contract clause, and at the same time the defendant filed a suit in California superior court for fraud. The superior court stayed the arbitration pursuant to a California arbitration statute which permits such a stay. The superior court held that despite the Federal Arbitration Act, which does not permit such a stay, because the parties' contract designated California law as applicable, California rules of arbitration should govern. The Supreme Court affirmed, holding that it would not disturb a state court ruling that although the contract did not expressly designate California arbitration rules, the choice of law provision *was intended by these parties to encompass those rules.*

Cunard argues that *Volt* dictates the view that when a state choice of law provision is part of a contract, state arbitration rules should be followed, and, because New York law prohibits punitive damage awards in arbitrations, the award in this case should be vacated.

Cunard's reliance on *Volt* is inapposite. The Supreme Court did not say a state choice of law provision that does not expressly encompass state arbitration rules, does so by operation of law. The court merely said that it would not disturb a state court's factual determination that the parties to the contract in *Volt* intended, to

invoke California arbitration rules. *Id.* 109 S.Ct. at 1255.

▇ In this case it is clear that federal rules, rather than New York state rules apply. The Supreme Court has said time and again that issues of arbitrability in cases subject to the Act are governed by federal law. *Southland Corp. v. Keating,* 465 U.S. 1, 10–13, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984); *Moses Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). The Supreme Court did not reconsider these cases in *Volt* and the rule that federal law governs applies in this case. *See Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 11 n. 5 (1st Cir.1989).[4]

b. Punitive Damages Under Federal Law

▇ Cunard asserts even under federal law punitive damages are outside the authority of an arbitration panel. For this proposition it relies on a string of labor arbitration cases which suggest that when a contract does not expressly provide for punitive damages, an arbitrator may not make such an award. *See e.g., Howard Foley Co. v. International Bhd. of Elec. Workers, Local 639,* 789 F.2d 1421 (9th Cir.1986).

These cases are not relevant in the commercial arbitration context.[5] The contract between Cunard and Todd expressly incorporated the Commercial Rules of the American Arbitration Association which includes Rule 43: "Scope of Award: The arbitrator

---

**4.** Most recently, a New York district court rejected the precise argument proffered by Cunard here. In *Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151 (S.D.N.Y.1990), the contract between the parties contained a New York choice of law provision and the defendant argued that in light of *Volt,* the provision should preclude the award of punitive damages per *Garrity.* The court responded: "*Volt* does not stand for the proposition that any time a choice-of-law provision is included in an arbitration agreement, such a provision necessarily requires the application of state, rather than federal, arbitration law. Rather, the Court merely held that where such a result is intended by the

parties, that intention should be carried out by a court enforcing the arbitration agreement." The court held that no such intent was clear without more than the choice of law clause, and that in light of an expansive agreement to arbitrate, the parties had empowered the arbitrators to award punitive damages.

**5.** *See Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 10 (1st Cir.1989)("[T]he concerns which may warrant such a rule in the labor arbitration field are not present in the commercial arbitration context.")

may grant any remedy or relief which the Arbitrator deems just and equitable within the scope of the agreement of the parties." At least two federal courts have held that the application of this rule, coupled with a broad arbitration agreement permits arbitrators to award punitive damages. *Willoughby; Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6 (1st Cir.1989). A series of other federal courts have held that federal policy in favor of a broad view of arbitrability supports the power of arbitrators to award punitive damages. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1387 (11th Cir. 1988); *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151 (S.D.N.Y.1990); *Singer v. E.F. Hutton & Company, Inc.*, 699 F.Supp. 276 (S.D.Fla.1988); *Ehrich v. A.G. Edwards & Sons, Inc.*, 675 F.Supp. 559 (D.S.D.1987); *Willis v. Shearson/American Express, Inc.*, 569 F.Supp. 821 (M.D.N.C.1983).[6]

We hold that the expansive view that has been taken of the power of arbitrators to decide disputes, coupled with the incorporation of AAA Commercial Arbitration Rule 43 by the parties, provided the arbitration panel here with authority to make the punitive damage award.

### c. Was the Punitive Damage Award Appropriate

■■■ There is no doubt that New York substantive law applies to the question whether, although the panel had the power to award punitive damages, the award was legally appropriate given the facts of this case. This is a factual question and we review only whether there was manifest disregard of law. Under New York law, punitive damages for fraud are

available "upon a showing of willful and wanton conduct." *Faller Group, Inc. v. Jaffe*, 564 F.Supp. 1177, 1185 (S.D.N.Y.1983). The arbitration award of punitive damages expressly relies on Cunard's "deceptive practices, [and] knowingly making incorrect representations to Todd during contract performance...." The arbitration panel obviously was convinced Cunard was guilty of willful and wanton fraud and as such did not act in manifest disregard of New York law in making the punitive damage award.

### d. Due Process

■ Cunard finally asserts that the punitive damage award here violates due process because the award is not subject to the procedural strictures of the courtroom. Appellant argues the absence of rules of evidence, for instance, create a substantial likelihood of an erroneous award. Also, because the standard of review on appeal is narrow, an erroneous award is likely to prevail. The possibility of a deprivation of Cunard's substantial interest (i.e., $1 million) without the formalities of the courtroom, coupled with a minor governmental interest here is, in Cunard's view, enough to set out a due process claim under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Cunard's assertion that arbitrators are not bound by rules of evidence, procedure or substantive law, applies to all arbitrator decisions. Because of the lack of formality, parties enter into arbitration by contract, rather than through a statutory scheme imposed involuntarily. Cunard cannot agree to arbitrate "all disputes" and then assert that an award made pursuant to that agreement, unless it is faulty for

6. Only one federal court rejected this view and it did so in a significantly different context. In *Fahnestock and Co., Inc. v. Joseph J. Waltman*, 935 F.2d 512 (2nd Cir.1991), the Second Circuit, relying on *Garrity*, vacated an award of punitive damages by an arbitrator. The court held that because the *Garrity* decision is not in direct conflict with the Federal Arbitration Act, it could apply *Garrity* without offending the federal substantive law of arbitration.

Significantly, although it held that *Garrity* applies and vacated the punitive damage award,

the court distinguished the federal cases that reject the *Garrity* position on the ground that "the arbitration agreements in those cases incorporate the rules of the American Arbitration Association which provide for an arbitration panel's award of 'any remedy or relief which is just and equitable and within terms of the agreements of the parties.'" *Id.* at 519. Significantly, the expansive AAA arbitration provision was a part of the contract between Todd and Cunard.

some reason, denies due process because it is not sufficiently reliable. Cunard had every opportunity to present evidence, to argue the merits of its position, and to challenge the arbitrator's award in court. Having taken advantage of this process, into which it entered voluntarily, Cunard cannot now argue that its due process was denied.

## VI. ATTORNEYS' FEES

The panel awarded "[a]ttorneys' fees ... to Todd as a consequence of improper conduct and bad faith exhibited by Cunard during the course of the arbitration, which conduct and bad faith caused the arbitration to be unnecessarily extended by a considerable number of days." Cunard asserts that it was beyond the power of the arbitrators to award attorneys' fees because federal law precludes such an award where there is no express contract provision providing for attorneys' fees. Todd argues federal law does not preclude an attorneys' fee award when it is based, as here, on bad faith conduct.

█ The issue of attorneys' fee awards in arbitration has not been decided in this circuit. Cunard relies on two federal cases which appear to preclude attorneys' fee awards in arbitration. In *Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico*, 692 F.2d 210, 214 (1st Cir. 1982), the court vacated an attorneys' fee award because no claim for fees was made, no rationale was provided for the award, and no bad faith conduct was alleged or proved. For those reasons the court held "the award did not draw its essence from the collective bargaining agreement and ... the arbitrator clearly exceeded his authority." The case does not, however, stand for the proposition that commercial arbitrators may not award attorneys' fees. The court based its decision on the lack of a *claim for fees* or evidence supporting bad faith. Also, the case involved labor rather than commercial arbitration and as such is not authoritative in the commercial context.

Cunard also cites *Sammi Line Co., Ltd. v. Altamar Navegacion*, 605 F.Supp. 72 (S.D.N.Y.1985). In *Sammi*, which arose in

the commercial arbitration context, the district court vacated an attorneys' fee award. The arbitrator in *Sammi*, however, awarded fees to the *prevailing party*, without any express contract authorization. The district court vacated because the arbitrator ignored the general "American Rule" regarding attorneys' fees that parties should bear their own costs. The case is inapposite because a bad faith exception to the "American Rule" is recognized in federal courts and it was precisely this bad faith exception that was applied by the panel here. *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Dollar Systems Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165 (9th Cir.1989).

Federal law takes an expansive view of arbitrator authority to decide disputes and fashion remedies, particularly when a dispute arises between parties to a commercial contract with an arbitration clause that incorporates AAA Commercial Rule 43, and which applies to every dispute arising under the agreement. In light of the broad power of arbitrators to fashion appropriate remedies and the accepted "bad faith conduct" exception to the American Rule, we hold that it was within the power of the arbitration panel in this case to award attorneys' fees.

### a. Was the Attorneys' Fee Award Appropriate

Cunard asserts even if arbitrators can award attorneys' fees, the award was improper in this case because it was not guilty of sufficient bad faith to justify application of the exception to the American Rule. "[A] court may assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dollar Systems*, 890 F.2d at 175 (citations omitted).

█ The bad faith finding here was based on facts within the sole purview of the panel, and this court cannot disturb that determination unless the panel acted in manifest disregard of law. Evidence of Cunard's misconduct during the course of the litigation, recounted in the district

court opinion, 735 F.Supp. at 1468, is more than sufficient to support a bad faith determination. Thus, we hold that the attorneys' fee award was proper here.

## VII. CUNARD'S COUNTERCLAIM

■ Cunard asserts that the arbitration panel incorrectly denied its counterclaim. That claim arose under section 6 of the contract which provides for liquidated damages in the event Todd did not complete the project within the allotted period. Todd did not finish the job and thus Cunard asserts damages under section 6, for monies expended to complete the project, and for losses resulting from project delay.

The arbitration panel denied this claim and the district court confirmed that decision, stating the "panel could have found under New York law that Cunard was not entitled to liquidated damages for delay of completion because the panel could have found that Cunard was the cause of [the] delay." *Todd,* 735 F.Supp. at 1467 (citing *Staten Island Supply Co., Inc. v. Beverly-Glenwood Richmond Corp.,* 96 A.D.2d 553, 465 N.Y.S.2d 232 (1983)). The district court continued: "Similarly, the panel could have denied Cunard's claims for completion costs because the panel could have found that Cunard had no right to such costs where Cunard ... was the cause of Todd's inability to perform." *Id.* (citing *Grimpel v. Hochman,* 74 Misc.2d 39, 343 N.Y.S.2d 507 (1972)).

Cunard reasserts this claim on appeal. The narrow standard of review with which we review the arbitrators' decision precludes the court from reassessing the evidence or deciding whether the panel correctly decided the counterclaim. The district court correctly held that the panel could rationally rely on New York law to decide that the counterclaim lacked merit.

## VIII. CONCLUSION

The decision of the district court confirming the arbitration award is, in all respects, AFFIRMED.